1  Mark Gomez, Esq. (SBN 289164)
2  Susan Murphy Esq. (SBN 185335)
   GOMEZ LAW, APC
3  3250 Wilshire Blvd. Ste. 1901
   Los Angeles, CA 90010
4  T (855) 219-3333/ F (818) 574-6730
5  sm@gomezlawla.com/ info@gomezlawla.com

6
   Attorney for Plaintiff,
7  ZOLLIE STEVENS

8
        **UNITED STATES DISTRICT COURT OF CALIFORNIA**
9       **FOR THE CENTRAL DISTRICT – WESTERN DIVISION**

10
   ZOLLIE STEVENS, *an individual,* Z          Case No:
11 REAL ESTATE
12         Plaintiff,                           **VERIFIED COMPLAINT FOR:**
13         vs.                                  **(1) VIOLATION OF THE TRUTH IN
                                                    LENDING ACT 15 U.S.C.S. §1601
14                                                  et al;**
   VLADIMER MIKHAILOVICH                        **(2) FRAUD**
15 ISPEROV, an individual, BORIS                **(3) NEGLIGENT
   DORFMAN, an individual, LENDING                  MISREPRESENTATION;**
16 BEE, INC, a corporation, VELOCITY            **(4) SLANDER OF TITLE;**
   COMMERCIAL CAPITAL LLC, a                    **(5) CANCELLATION OF
17 corporation, IRIDIUM LLC, a                      INSTRUMENTS;**
   corporation, AFD REALTY INC., a              **(6) QUIET TITLE;**
18 corporation,  FRED DOCTOROVICH,              **(7) BREACH OF FIDUCIARY DUTY**
19 an individual, ANATOLY                       **(8) CIVIL THEFT OF $1,400,000.00,
   DOCTOROVICH, an individual,                      PURSUANT TO CAL. PENAL
20 PALOMA FIERRO, an individual,                    CODE §496(c);**
21 COMPASS CALIFORNIA INC.,  a                  **(9) VIOLATION OF CAL. CIV. CODE
   corporation, MARYIA                              §1798.93 IDENTITY THEFT;**
22 PAKHOMAVA, an individual notary,             **(10)  VIOLATION OF THE
   ANI KAMIKYAN, an individual                      BUSINESS AND PROFESSIONS
23 notary, U.S. BANK NATIONAL                       CODE §17200 et al.;**
24 ASSOCIATION, as INDENTURE                    **(11)  QUIET TITLE**
   TRUSTEE FOR VCC2020 MCI
25 TRUST and Does 1 through 10
26
           Defendants.
27
28

COMES NOW Plaintiff ZOLLIE STEVENS (Plaintiff/ ZOLLIE) by and through his counsel to complain against Defendants Vladimer Mikhailovich Isperov (ISPEROV), Boris Dorfman (DORFMAN), Lending Bee Inc. (LENDING BEE), IRIDIUM LLC (IRIDIUM), VELOCITY COMMERCIAL CAPITAL LLC (VELOCITY),  Fred Doctorovich (DOCTOROVICH), ANATOLY DOCTOROVICH, PALOMA FIERRO (FIERRO) an individual real estate agent, MARYIA PAKHOMAVA (POKHOMAVA) an individual notary, ANI KAMIKYAN (KAMIKYAN) an individual notary, and COMPASS CALIFORNIA INC., a real estate brokerage corporation (the responsible brokerage for FIERRO) for 1) Violation of the Truth in Lending Act 15 U.S.C.S. §1601 et al, 2) Fraud, 3) Negligent Misrepresentation, 4) Slander of Title, 5) Cancellation of Instruments, 6) Quiet Title, 7) Breach of Fiduciary Duty, 8) Civil Theft of $1,400,000.00 pursuant to Cal. Penal Code§496(c) and treble damages therefore, 9) Violation of California Civil Code §1798.93 for Identity theft, and 10) Violation of the Business and Professions Code §17200 et al. and pleads as follows:

## SUBJECT REAL PROPERTY AT ISSUE

1.    In the instant case there are multiple properties in California and Michigan that Defendants caused Plaintiff to lose, and three real properties that are the subject of this action, however the one real property that remains at issue, the only property ZOLLIE retains after his Chapter 11 Bankruptcy judge Barry Russell

released it to him without prejudice to sue the defendants herein, is his personal

home at 1541 North Stanley Avenue, West Hollywood California 90046 (N.

Stanley) which is legally described as:

> " PARCEL 1:
> THE NORTH 60 FEET OF THE SOUTH 455 FEET OF LOT 11 OF THE TRACT 3481 IN THE
> CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP
> RECORDED IN BOOK 38, PAGE 4 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF
> SAID COUNTY.
> EXCEPT THEREFROM THAT PORTION DESCRIBED AS FOLLOWS:
> BEGINNING AT THE SOUTHWEST CORNER OF THE ABOVE DESCRIBED PORTION OF SAID
> LOT 11; THENCE EAST PARALLEL WITH THE SOUTH LINE OF SAID LOT, 13 FEET; THENCE
> NORTH, PARALLEL WITH THE EAST LINE OF SAID LOT, 60 FEET; THENCE WEST PARALLEL
> WITH THE SOUTH  LINE OF SAID LOT, 13 FEET, MOR OR LESS, TO THE WEST OF SAID LOT
> 11; THENCE SOUTH ALONG THE LAST MENTIONED LINE 60 FEET, TO THE POINT OF
> BEGINNING.
> PARCEL 2:
> THE NORTH 60 FEET OF THE SOUTH 455 FEET OF LOT 93 OF TRACT 1416, IN THE CITY
> OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 18, PAGE 117 OF MAPS, IN THE
> OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.
>
> APN: 5550-005-024."

**(Exhibit 1 [GD 8-13-2019 N. Stanley *Zollie Stevens*].)**

2.      The California Street property, which ZOLLIE was forced to sell in his

Chapter 11 Bankruptcy on December 28, 2021 to satisfy a creditor who is also

Defendant IRIDIUM herein, was 2015 California Street Huntington Beach

California 92648 (California Street) and is legally described as:

> " LOT 8 BLOCK 2003 OF VISTA DEL MAR TRACT, IN THE CITY OF HUNTINGTON
> BEACH, COUNTY OF ORANGE, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK
> 4 PAGE(S) 15 OF MISCELLANEOUS MAPS IN THE OFFICE OF THE COUNTY RECORDER OF
> ORANGE COUNTY.
>
> APN: 025-085-19."

**(Exhibit 4 [GD California St. *Zollie Stevens*/ OC/ 5-17-2018].)**

3.      The Knoll View property, which ZOLLIE was *also* forced to sell on October 15, 2021 pursuant to his Chapter 11 Bankruptcy case to satisfy a creditor who is also Defendant IRIDIUM herein, was 29865 Knoll View Drive, Rancho Palos Verdes, California, 90275 (Knoll View) and is legally described as:

"PARCEL 1:
LOT 13 OF TRACT 27142, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS ANGELES STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 740, PAGES 22 TO 25, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

PARCEL 2:
A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THE EASTERLY 105 FEET OF THE SOUTHERLY 10.00 FEET OF LOT 14 OF TRACT 27142, IN THE CITY OF RANCHO PALOS VERDES, COUNTY OF LOS ANGELES STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 740, PAGES 22 TO 25, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 7566-009-017."
**(Exhibit 14 [GD Knoll View *Z Real Estate* 2-21-2020].)**

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action under 28 U.S.C. §1331, which confers original jurisdiction on federal district courts to hear suits arising under the Constitution, laws, or treaties of the United States.  This Court has supplemental jurisdiction under 28 U.S.C. §1367(a) to hear the pendent state law claims that arise from the same case or controversy under Article III of the United States Constitution and Personal Jurisdiction over the parties because Defendants work, reside and/or systematically do business in the County of Los Angeles and Plaintiff resides in this district (*Cal. Code of Civil Procedure §760.040(a).*)

//

## **PARTIES**

5.     Plaintiff Zollie Stevens (Plaintiff or ZOLLIE) is a real estate investor transforming distressed properties into desirable sales and rentals that also on occasion works as an actor and print model.

**6.**     Plaintiff Z Real Estate is California limited liability company of which ZOLLIE is the sole member and manager.

**7.**     Defendant VLADIMIR ISPEROV (ISPEROV) is an individual and holds a California real estate salesperson license. **(Exhibit 5 [Lending Bee DRE lookup]**.) ISPEROV is an owner of Defendant LENDING BEE and an unlicensed mortgage broker/ originator and acted as an unlicensed mortgage servicer for the lender Defendants in this case which are IRIDIUM LLC (IRIDIUM) and VELOCITY COMMERCIAL CAPITAL, LLC (VELOCITY). ISPEROV originated three loans for ZOLLIE using identity theft and forged documents which were **Loan #1** (lender VELOCITY), a refinance of N. Stanley originated by identity theft as described herein, **Loan #2** (lender IRIDIUM), a second against N. Stanley and California Street originated by identity theft *and* civil theft, the proceeds having never been disbursed to ZOLLIE as described herein, and **Loan #3** (lender IRIDIUM) a purchase money mortgage for Knoll View also originated by forged documents as described herein. (**Exhibit 12 [DOT Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,762,500.00]; Exhibit 22 [DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate***

2-26-2020/ LA/ $1,400,000.00]; Exhibit 21 [DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-26-2020/ OC/ $1,400,000.00]; Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note Loan #3 Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].)

**8.**      Defendant BORIS DORFMAN (DORFMAN) is an individual and holds a California real estate salesperson license; DORFMAN is an owner of Defendant LENDING BEE and an unlicensed mortgage broker/ originator and is a co-actor with ISPEROV. **(Exhibit 5 [Lending Bee DRE lookup].)**

**9.**      Defendant Lending Bee Inc. (LENDING BEE) is a California corporation and a licensed California real estate brokerage that also does business as an unlicensed originator of mortgages which has its principal place of business as 4605 Lankershim Boulevard Suite 419, North Hollywood California 91602. LENDING BEE is owned by ISPEROV and DORFMAN and employs ISPEROV as a real estate agent and an unlicensed mortgage broker/ originator/ servicer. **(Exhibit 5 [Lending Bee DRE lookup].)**  At all relevant times to this action, a unity of interest and ownership existed between ISPEROV, DORFMAN and LENDING BEE, in that DORFMAN is the majority and controlling shareholder and CEO of LENDING BEE and ISPEROV holds himself out as a partner of DORFMAN and the Chief Lending Officer of LENDING BEE, and under the facts of this particular case, justice and equity can best be accomplished and fraud and

unfairness defeated by a disregard of the distinct entity of the corporate form. LENDING BEE was used here as a shell, instrumentality, and conduit by which ISPEROV and DORFMAN conducted fraudulent and illegal lending business for their personal benefit and gain, and ISPEROV and DORFMAN were, at all relevant times in this action, jointly and severally the alter ego of LENDING BEE and any individuality and separateness between LENDING BEE, on the one hand, and ISPEROV and DORFMAN, on the other hand, has ceased.

10.     Defendant VELOCITY COMMERCIAL CAPITAL, LLC (VELOCITY) is a California limited liability company engaged in hard money lending which holds the current mortgage on N. Stanley (**Loan #1**) which Plaintiff herein seeks to have adjudged void and expunged due to fraud in the origination which occurred on December 31, 2019 in the amount of **$1,932,500.00** without ZOLLIE's knowledge based on identity theft in violation of Cal. Civ. Code §1798.93. (**Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00]; Exhibit 42 [Conditional Loan approval 12-30-2019].**) Plaintiff alleges a unity of interest between ISPEROV, DORFMAN, LENDING BEE and VELOCITY (the VELOCITY Defendants), since VELOCITY participated and endorsed the financing of **Loan #1** on December 31, 2019 by identity theft, documents forged and fraudulently notarized after the fact, without the knowledge of consent of ZOLLIE, the trustor, and without providing him Truth in Lending Act (TILA) or Reg Z disclosure as required under 15 U.S.C. § 1601, et

seq. (**Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00]; Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**)

11.     Defendant IRIDIUM LLC (IRIDIUM)is a California limited liability company that originated and recorded a loan for **$1,411,819.27** which was **Loan #2** which was a secret second deed of trust on N. Stanley (cross-collateralized with California Street) that encumbered ZOLLIE's real property but which was used for no other purpose than to enrich defendants as it did not finance or fund anything and the proceeds went to Defendants, not ZOLLIE. (**Exhibit 22 [Second DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-26-2020/ LA/ $1,400,000.00]; Exhibit 21 [Second DOT Loan #2 N. Stanley and California Street IRIDIUM to *Zollie Stevens* and *Z Real Estate* / 2-26-2020/ OC/ $1,400,000.00]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2 (Loan # HM20200124004) N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-7-2020/ $1,411,819.27].**)

12.     Defendant AFD REALTY, INC. (AFD) is a California corporation and a California licensed real estate broker engaged in originating and processing hard money loans.  AFD is owned by DOCTOROVICH and his brother ANATOLY DOCTOROVICH and operates in unity with Defendants ISPEROV, DORFMAN,

and LENDING BEE (the LENDING BEE/ AFD Defendants). (**Exhibit 49 [DRE lookup Doctorovich & AFD Secty State lookup]**.)

13.     Defendant Fred Doctorovich (DOCTOROVICH) is a licensed California real estate broker and the owner of IRIDIUM and AFD REALTY, INC. (AFD), which he co-owns with his brother, Defendant Anatoly DOCTOROVICH.  At all relevant times to this action, a unity of interest existed between IRIDIUM, AFD and FRED DOCTOROVICH, in that both IRIDIUM and AFD are owned by DOCTOROVICH and Defendant operated both companies from his home at 21451 Salamanca Ave., Woodland Hills, CA 91364. (**Exhibit 49 [DRE lookup Doctorovich & AFD Secty State lookup]**.)  Under the facts of this case, IRIDIUM and AFD were used merely as a shell by which DOCTOROVICH conducted a fraudulent and illegal lending business in concert with LENDING BEE, ISPEROV and DORFMAN, for his personal benefit and gain, and DOCTOROVICH was, at all relevant times in this action, the alter ego of IRIDIUM and AFD, such that any individuality and separateness between the entities has ceased, and they are the alter ego of one another.  DOCTOROVICH/ AFD also shares office space with LENDING BEE at 4605 Lankershim Boulevard Suite 419, North Hollywood California 91602 and at all relevant times to this action, a unity of interest existed between IRIDIUM, AFD, DOCTOROVICH, Anatoly DOCTOROVICH, ISPEROV, DORFMAN and LENDING BEE (the IRIDIUM Defendants) who originated **Loan #2** and **Loan #3** through IRIDIUM.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**14.**     Defendant PALOMA FIERRO (FIERRO) is an individual and holds a California real estate salesperson license and at all times relevant, was employed by Defendant COMPASS CALIFORNIA, INC.  Prior to bringing ZOLLIE to meet ISPEROV on January 7, 2020, FIERRO DocuSigned ZOLLIE's name and used her own money (_$41,850.00_) to open an escrow on Knoll View on September 11, 2019. **(Exhibit 15 [Fierro email 9-11-2022 w/ fake DocuSign+ check as attachments].)**  To facilitate her commission for the Knoll View sale, FIERRO cooperated with ISPEROV to engage in identity theft and participated in creating forged documents so that ISPEROV could originate **Loan #1** for **$1,932,500.00** against N. Stanley on December 31, 2019 without ZOLLIE's knowledge or consent. **(Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to _Zollie Stevens_ 1-9-2020/ $1,932,500.00]; Exhibit 30 [email Spencer Farrar 12-31-2019]; Exhibit 10 [email Isperov 1-7-2020 ("_Nice to meet you today…_")].)**  FIERRO also attempted to get ZOLLIE to sign floating signature pages for **Loan #2** against N. Stanley and California Street for **$1,411,819.27** which would also be funded by forged documents without ZOLLIE's knowledge or consent, the proceeds of which would be shared by FIERRO and the other IRIDIUM defendants. **(Exhibit 58 [Email 2-20-2020 Fierro-to-Zollie]; Exhibit 59 [Email 2-20-2020 Fierro-to-Zollie].)**

**15.** Defendant Compass Real Estate, which is located at 6430 Sunset Blvd Suite 600, Los Angeles, CA 90028 was the responsible broker for FIERRO during the period at issue in this complaint. (**Exhibit 3 [DRE lookup Fierro]**.)

**16.** Defendant Maryia Pakhomava (Pakhomava) is a notary (no. 2247319) who notarized two floating forged signature pages on two deed of trust that were **Loan #2** on February 13, 2020 which funded on February 7, 2020, a week before her notarization. (**Exhibit 22 [Second DOT Loan #2 N. Stanley/ California Street IRIDIUM to *Zollie Stevens* and *Z Real Estate* $1,400,000.00 / 2-26-2020/ LA]; Exhibit 21 [Second DOT Loan #2 N. Stanley and California Street IRIDIUM to *Zollie Stevens* and *Z Real Estate* $1,400,000.00 / 2-26-2020/ OC/]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-7-2020/ $1,411,819.27]**.) Defendant Pakhomava also notarized another floating signature page on February 16, 2020 which was for **Loan #3**, for the purchase of Knoll View. (**Exhibit 13 [DOT Loan #3 Knoll View IRIDIUM to *Z Real Estate*/ 2-21-2020/ $1,400,000.00].**)

**17.** Defendant Ani Kamikyan (KAMIKYAN) is a notary (no. 2143911) who also notarized a forged floating signature page for a deed of trust for **Loan #1** against N. Stanley on January 7, 2020 via which was originated and funded on December 31, 2019. (**Exhibit 12 [DOT Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,762,500.00]; Exhibit 28 [email 12-11-2020 + final**

**HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00].)**

18.    Defendant U.S. BANK NATIONAL ASSOCIATION, as INDENTURE TRUSTEE FOR VCC2020 MCI TRUST is a securities intermediary engaged in holding security interests in hard money loans as trustee that received assignment of **Loan #1** on August 4, 2020. (**Exhibit 61 [Assignment DOT Loan #1 8-4-2020].)**

19.    Plaintiff alleges a unity of action between VELOCITY, LENDING BEE, DORFMAN, ISPEROV, AFD, DOCTOROVICH, and KAMIKYAN regarding **Loan #1,** and between IRIDIUM, LENDING BEE, DORFMAN, ISPEROV, AFD, DOCTOROVICH, and Pakhomava regarding **Loan #2** and **Loan #3**. Plaintiff does not know the true names, capacities, or basis for liability of fictitious defendants sued herein as Does 1 through 20 which may be in some manner liable to the Plaintiff regarding N. Stanley, California Street, or Knoll View and the matters in this case.

## **INTRODUCTION**

20.    In 2019, before ISPEROV got his hooks into ZOLLIE's assets, ZOLLIE was a successful real estate investor with over $2M in equity spread out over four properties that he owned in Michigan and California which were:

i.    ZOLLIE's primary residence, N. Stanley, which *Zollie Stevens* purchased on August 13, 2019 for $1,810,000.00 with $400,000.00 down payment and

which borrower *Zollie Stevens* financed with a hard money purchase loan from 5 Arch Funding Corp (Arch Funding).  (**Exhibit 1 [GD to *Zollie Stevens*/ N. Stanley/ 8-13-2019]; Exhibit 2 [DOT Arch 5 Funding to *Zollie Stevens*/ N. Stanley/ 8-13-2019].)**  Once ZOLLIE started renovating N. Stanley, which had not been updated since the 1930s, the market value shot up and he had an appraisal done that accounted for his finished renovations which was about $1M higher at $2,850,000.00. (**Exhibit 34 [Appraisal N. Stanley 7-21-2019].**)

ii. In 2019, ZOLLIE also owned California Street which *Zollie Stevens* purchased over a year earlier on May 17, 2018 for $1,000,000.00 with $300,000.00 downpayment and a mortgage of $700,0000.00 and which *Z Real Estate* had refinanced on August 13, 2019 for $976,000.00 with a 2-year hard money loan from PS Funding after ZOLLIE purchased N. Stanley on December 11, 2019 and California Street was no longer his primary residence and became a rental property. (**Exhibit 4 [GD California St./ OC/ 5-17-2018]; Exhibit G [DOT PS Funding to *Z Real Estate* $976,000.00 California St./ OC/ 12-11-2019].**)

iii. ZOLLIE's third property was 19171 Trinity Street Detroit Michigan 48219, (Trinity Street) a single family house in Michigan worth about $63,000.00 on which there was no mortgage and which ZOLLIE kept for his family in Detroit. (**Exhibit 9 [Trinity Warranty Deed 10-15-2021]**); and

iv.  ZOLLIE's fourth property, also in Detroit, was a 16-unit apartment building worth about $800,000.00 located at 3675 Oakman Blvd. Detroit Michigan 48204 (the Lucille Manor apartments) which *Zollie Stevens* purchased in 2007 and which *Lucille Manor Apartments LLC,* (Zollie Stevens managing member) refinanced in August 12, 2019 with a 2 year hard-money loan to P.S. Funding for $305,000.00. ((**Exhibit 47**

**[Promissory Note PS Funding to *Lucille Manor Apartments LLC.*/ $305,000.00/ 8-12-2019].)**

21.     On January 7, 2020, when ZOLLIE met Vladimer ISPEROV at a Starbucks near his home at N. Stanley, he was collecting *$7-9,000.00* a month from the Lucille Manor Apartments in Detroit and *$9,000.00* a month for California Street in an exclusive enclave of Orange County and was getting offers to borrow at 2 – 2.5% on N. STANLEY in West Hollywood which he had purchased a few months before and which had already increased in value by about $400,000.00 through his renovations.  (**Exhibit 34 [Appraisal N. Stanley 7-21-2019]**.)  ZOLLIE's loans and payments at that time were the following:

i.   $10,920.00 per month for a one-year interest only hard-money loan to *Zollie Stevens* in favor of 5 Arch Funding Corp (Arch Funding) secured by N. Stanley in the amount of $1,456,000.00 with a maturity date of September 1, 2020 and an interest-only payment at 9%.  (**Exhibit 2 [DOT Arch 5 to *Zollie Stevens*/ N. Stanley/ 8-13-2019/ $1,456,000.00].)**

ii.   $7,523.33 per month for a two-year interest only hard money loan to *Z Real Estate* in favor of P.S. Funding secured by California Street in the amount of $976,000.00 at 9.250%. (**Exhibit 7 [DOT PS Funding to *Z Real Estate* $976,000.00 California St./ OC/ 12-11-2019]**.)

iii.   $2,418.54 per month for a two-year interest-only hard money note to *Lucille Manor Apartments LLC* in favor of PS Funding secured by the Lucille Manor Apartments due July 1, 2020 in the amount of $305,000.00 with at 9.5%. (**Exhibit 47 [Promissory Note PS Funding to *Lucille Manor Apartments LLC/* $305,000.00/ 8-12-2019]**.)

**22.**     In December 2019, before his real estate agent FIERRO introduced him to ISPEROV, ZOLLIE's total debt for his properties in California and Michigan was $2,737,000.00 and his renovations on N. Stanley had caused his equity to increase to well over a million dollars. (**Exhibit 2 [DOT Arch 5 to *Zollie Stevens*/ N. Stanley/ 8-13-2019/ $1,456,000.00]; Exhibit 7 [DOT PS Funding to *Z Real Estate* $976,000.00 California Street 12-11-2019**]; **Exhibit 47 [Promissory Note PS Funding to *Lucille Manor Apartments LLC*/ $305,000.00/ 8-12-2019];Exhibit 34 [Appraisal N. Stanley 7-21-2019]**.)  ZOLLIE's rental income was around $18,000.00 per month for California Street and the Lucille Manor Apartments in Detroit, he was current on his mortgage payments for all three properties, and he had a 762 credit score.[1] (**Exhibit 46 [Credit report 8-27-2019]**.)

**23.**     When ZOLLIE met ISPEROV on January 9, 2020, his monthly payments were $16,108.78 for two loans on two California properties, N. Stanley and California Street. (**Exhibit 2 [DOT Arch 5 to *Zollie Stevens*/ N. Stanley/ 8-13-2019/ $1,456,000.00]; Exhibit 7 [DOT California St./ PS Funding to *Z Real Estate*/ 12-11-2019/ $976,000.00].**)  Although ISPEROV and Lending Bee confused ZOLLIE for months by continuing to act as if there were only two loans,

---

[1] the Trinity Street property was owned outright.

ISPEROV actually saddled ZOLLIE with *three new loans* and monthly payments of **$47,697.67**.[2] (**Exhibit 23 [DiCenso email 2-25-2020.)**

24.     By March 1, 2020, a little less than two months after meeting ISPEROV, ZOLLIE's debt doubled from $2,372,000.00 to $4,732,500.00 and his equity shrunk to nothing, as ISPEROV put him into *three new loans,* one of which was outright theft, which were:

i.   **LOAN #1 / lender VELOCITY borrower ZOLLIE STEVENS**

A one-year hard money interest-only loan at 10.999% against N. Stanley with a deed of trust recorded January 9, 2020 for **$1,762,500.00,** but which actually funded on December 31, 2019 for **$1,932,500.00,** which was *prior to ZOLLIE meeting ISPEROV and* prior to the forged floating notary page by KAMIKYAN on January 9, 2020. (**Exhibit 12 [DOT Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,762,500.00]; Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-2019]; Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00].)** The Uniform Residential Loan application that ISPEROV baited ZOLLIE with on January 9, 2020 for **Loan #1** was for $1,880,000.00 for 30 years (360 months) at 5% interest. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**) When ISPEROV gave this loan application to ZOLLIE on January 7, 2020, he had already funded **Loan #1** for **$1,932,500.00**, the week

---

[2] The new payment for **Loan #1** for **$1,932,500.00** on N. Stanley would have been **$14,531.00**; the new payment for **Loan #2**, the (secret) second for **$1,411,819.27** on N. Stanley (cross-collateralized with California Street), would have been **$12,821.67**; the new payment for **Loan #3**, the purchase loan of $1,400,000.00 on Knoll View would have been **$12,821.67;** and the payment for the existing loan on California Street remained as it was which was **$7,523.33** per month – these amounts total **$47,697.67**.

before on December 31, 2019 which was over a week before he met ZOLLIE. (**Exhibit 12 [DOT <u>Loan #1</u> N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ <u>$1,762,500.00</u>]; Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-2019]; Exhibit 28 [email 12-11-2020 + final HUD <u>Loan #1</u> N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ <u>$1,932,500.00</u>].**)

ii. <u>**LOAN #2/ lender IRIDIUM borrower ZOLLIE STEVENS *and* Z REAL ESTATE (the loan that went to the IRIDIUM Defendants)**</u>

<u>**Loan #2**</u> was a one year hard money interest-only second deed of trust at 10.999% against N. Stanley *and* California Street, cross-collateralized with *Zollie Stevens* as trustor for N. Stanley and *Z Real Estate* as trustor for California Street, which had deeds of trust for <u>**$1,400,000.00**</u> recorded with the Orange County Recorder *and* the Los Angeles County Recorder, but which actually funded for <u>**$1,411,819.27**</u> on February 26, 2020. (**Exhibit 22 [2nd DOT <u>Loan #2</u> N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate* 2-26-2020/ LA/ <u>$1,400,000.00</u>]; Exhibit 21 [2nd DOT <u>Loan #2</u> N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate* 2-26-2020/ OC/ <u>$1,400,000.00</u>]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) <u>Loan #2</u>** (Loan # <u>HM20200124004</u>) **N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate* 2-7-2020/ <u>$1,411,819.27</u>]; Exhibit 48 [Promissory Note <u>Loan #2</u> 2nd DOT N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate*  2-11-2020 <u>$1,400,000.00</u>].**)

This <u>**Loan #2**</u> (Loan # <u>HM20200124004</u>) to IRIDIUM started out in January 2020 as a second deed of trust that ISPEROV negotiated with FIERRO, first for <u>between $75,000.00 and $100,000.00</u> (against N. Stanley only) then for $135,000.00 (still against N. Stanley only) which ended up as a secret second for

**$1,411,819.27** against two of his properties which was for the same amount as **Loan #3** ($1,400,000.00) which the Defendants managed to keep hidden from ZOLLIE until he received Notices of Default from two counties. (**Exhibit 27 [Letter of Intent 2nd DOT N. Stanley 1-2-2020 (**$75,000.00- $100,000.00)**]; Exhibit 41 [Borrowers Est. Loan #2 (**Loan # HM20200124004) **1-29-2020/ $135,000.00]; Exhibit 38 [Email Fierro / James Lough/ Jenny Kim 2-3-2020 p. 25/30 (***authorizing Lough to send $135,000.00 to Knoll View Escrow***)]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-7-2020/ $1,411,819.27]; Exhibit 16 [NOD California St./ IRIDIUM 6-18-2020/ OC/ $77,659.50]; Exhibit 17 [NOD N. Stanley/ IRIDIUM/ 6-19-2022/ $77,659.50].)**

**iii. LOAN #3 lender IRIDIUM borrower Z REAL ESTATE**

A one-year hard-money interest-only purchase money loan at 10.999% against Knoll View for **$1,400,000.00** for which ZOLLIE got title to Knoll View. (**Exhibit 13 [DOT Loan #3 Knoll View IRIDIUM to *Z Real Estate*/ 2-21-2020/ $1,400,000.00]; Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note Loan #3 Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].)**

25.   From **Loan #1** to VELOCITY which increased ZOLLIE's debt on N. Stanley by $476,500.00 (from $1,456,000.00 to $1,932,500.00), ZOLLIE got $167,000.00 dripped out to him in two payments. (**Exhibit 2 [DOT Arch 5 to *Zollie Stevens*/ N. Stanley/ 8-13-2019/ $1,456,000.00]; Exhibit 12 [DOT Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,762,500.00]; Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie***

*Stevens* 1-9-2020/ $<u>1,932,500.00</u>]; **Exhibit 36 [1-9-2020 dep. $105,000.00]**; **Exhibit 37 [2-27-2020 dep. $62,500.00]; Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note <u>Loan #3</u> Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].)**

26.     From **<u>Loan #2</u>**, a secret second that ISPEROV and IRIDIUM recorded against N. Stanley and California Street, ZOLLIE got ***nothing*** except two Notices of Default. (**Exhibit 48 [Promissory Note <u>Loan #2</u> 2nd DOT N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate*  2-11-2020 $<u>1,400,000.00</u>]; Exhibit 22 [2nd DOT <u>Loan #2</u> N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate* 2-26-2020/ LA/ $<u>1,400,000.00</u>]; Exhibit 21 [2nd DOT <u>Loan #2</u> N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate* 2-26-2020/ OC/ $<u>1,400,000.00</u>]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) <u>Loan #2</u>** (Loan # HM20200124004) **N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate* 2-7-2020/ $<u>1,411,819.27</u>]; Exhibit 16 [NOD California St./ IRIDIUM 6-18-2020/ OC/ $<u>77,659.50</u>]; Exhibit 17 [NOD N. Stanley/ IRIDIUM/ 6-19-2022/ $77,659.50].)**

**27.**     With **<u>Loan #3</u>** from IRIDIUM, ZOLLIE purchased Knoll View although he had already paid for it in full with the **$<u>1,411,819.27</u>** from **<u>Loan #2</u>** stolen by the IRIDIUM Defendants. (**Exhibit 13 [DOT <u>Loan #3</u> Knoll View IRIDIUM to *Z Real Estate*/ 2-21-2020/ $1,400,000.00]; Exhibit 62 [email 3-9-2020 DiCenso +**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**(forged) Promissory Note <u>Loan #3</u> Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].)**

## <u>GENERAL ALLEGATIONS</u>

**28.**     Between 2008 and 2018, ZOLLIE was a successful real estate investor and sometimes actor working and living sometimes in Australia and sometimes in his home city of Detroit.

**29.**     In 2008, ZOLLIE started buying properties in Detroit. (**Exhibit 9 [Trinity Warranty Deed 10-15-2021**]; **Exhibit 47 [Oakman promissory note $305,000.00 8-12-2019].)**

**30.**     By 2017, after many trips to southern California for work, ZOLLIE sold a building he owned in Detroit and bought California Street with the help of his real estate agent FIERRO and a mortgage broker Byron Enriquez (BYRON).[3]   ZOLLIE purchased California Street as *Zollie Stevens* in 2018 for $976,000.00 with a mortgage of $700,000.00. (**Exhibit 4 [GD 5-17-2018 California St.].**) Because of the high-end upgrades and renovations he did to California Street, by the time ZOLLIE left again to travel, he was able to rent California Street for approximately $9,000.00 per month.

**31.**     On August 13, 2019, ZOLLIE purchased N. Stanley for $1,810,000.00 with a $400,000.00 down payment and a hard-money interest-only mortgage for

---

[3] 13600 Lasalle Boulevard Detroit MI 48238 was the house that Zollie sold.

**$1,456,000.00** from 5 Arch Funding Corp (Arch Funding) again with the help of BYRON and FIERRO. (**Exhibit 2 [DOT Arch 5 to *Zollie Stevens*/ N. Stanley/ 8-13-2019/ $1,456,000.00].**)   N. Stanley had not been touched since the 1930s and ZOLLIE got the $1,456,000.00 loan with an interest-only payment of $10,920.00 at 9% as a temporary loan while he renovated N. Stanley to bring it up to its current value of $2,850,000.00. (**Exhibit 34 [Appraisal N. Stanley 7-21-2019].**)

32.    In August 2019, less than a month after purchasing N. Stanley, FIERRO showed ZOLLIE Knoll View, a house with ocean views on a hill in Rancho Palos Verdes with an asking price of $1,399,000.00, and suggested to ZOLLIE that he could refinance N. Stanley and use that equity to purchase Knoll View.  At that time ZOLLIE had a credit score of 760. (**Exhibit 46 [Credit report 8-27-2019].**)

33.    In August 2019, when BYRON said he couldn't get ZOLLIE a refinance for N. Stanley that would be sufficient for a down payment on Knoll View and to finish his repairs, ZOLLIE was resigned to let Knoll View go, but FIERRO wasn't.

34.    On September 7, 2019, FIERRO was so anxious for ZOLLIE to purchase Knoll View that she DocuSigned a purchase and sale agreement on ZOLLIE's behalf and DocuSigned an agreement (also on ZOLLIE's behalf) to pay herself back. (**Exhibit 15 [Fierro email 9-11-2022 w/ fake DocuSign+ check as attachments].**)

35.    On September 11, 2019, FIERRO deposited her own money into escrow for the purchase of Knoll View. (**Exhibit 15 [Fierro email 9-11-2022 w/ fake**

**DocuSign+ check as attachments]**.)  FIERRO promised ZOLLIE that if the sale didn't go through she would get her money back.

**36.**    By around October 3, 2019, ZOLLIE was intent on letting Knoll View go since BYRON and another broker friend Lou Ellen Sla-Ana (LOU ELLEN) were offering him a $1,638,000 refinance on N. Stanley with a fixed rate of 9.99 amortized over 360 months (no balloon) which would have been sufficient to finish his renovation and begin renting the property. By then, ZOLLIE was urging FIERRO to get her earnest money deposit back because he was mainly concerned with finishing his renovations on N. Stanley. (**Exhibit 15 [Fierro email 9-11-2022 w/ fake DocuSign+ check as attachments]**..)

**37.**    In December 2019, wanting her commission for Knoll View, FIERRO pressured ZOLLIE to refuse LOU ELLEN's deal and go with *her* lender that could get ZOLLIE $400,000.00 in cash from a refinance of N. Stanley which would be enough to finish the work on N. Stanley (about $150,000.00) *and* put a down payment on Knoll View(about $250,000.00).  This was when FIERRO told ZOLLIE about Lending Bee and ISPEROV.

**38.**    Around December 31, 2019, with the assistance of FIERRO, and without ZOLLIE's knowledge, VELOCITY funded **Loan #1** for **$1,932,500.00** against N. Stanley which was funded sometime between December 27, 2019 and December 31, 2019. (**Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00]; Exhibit 31[Email**

**Farrar 4-24-2020 + Est. Borrowers Statement**]; **Exhibit 42 [Conditional Loan approval 12-30-2019]; Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-2019].)**  According to the forged loan documents that ZOLLIE received after the fact, **Loan #1** to VELOCITY was a hard money one-year mortgage at 10.999% for **$1,932,500.00**. **(Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00]; Exhibit 26 [Chang email 12-21-22+forged loan disclosures p. 5/14)].)**  ZOLLIE never filled out a loan application for **Loan #1**, never signed a promissory note for **Loan #1**, and never received disclosures for this loan.  The forged documents he received after the fact have ZOLLIE's endorsement initials as "Z.A." instead of "Z.S." **(Exhibit 26 [Chang email 12-21-22+forged loan disclosures p. 11/14]; Exhibit 19 [Doc. Examiner Report].)** The Origination Agreement has the California Street property as ZOLLIE's home address even though this property was financed by *Z Real Estate* at that time and had renters in it. **(Exhibit 26 [Chang email 12-21-22+forged loan disclosures p. 8/14]; Exhibit 7 [DOT PS Funding to *Z Real Estate* $976,000.00 California St./ OC/ 12-11-2019].)**  ZOLLIE alleges these documents were forged without his knowledge, either before he met ISPEROV or after by Defendants to cover their tracks once they were investigated by the Fraud department investigator from the Department of Real Estate (DRE) Eric Chang. **(Exhibit 26 [Chang email 12-21-22+forged loan disclosures].)**  The forged mortgage application would not be

provided to ZOLLIE until January 2023 when it was provided to Chang. (**Exhibit 26 [Chang email 12-21-22+forged loan disclosures]; Exhibit 19 [Doc. Examiner Report]**.)

**39.**    On December 31, 2019, ZOLLIE is informed and alleges that **Loan #1** closed and was funded by VELOCITY for **$1,932,500.00** creating a benefit of $476,500.00 after ZOLLIE's existing mortgage of $1,456,000.00 to Arch Funding was paid off. (**Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00]; Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-2019]**.) The conditional loan approval shows that Defendants closed **Loan #1** on December 30, 2019 and then pasted a fake signature on it for January 7, 2020. (**Exhibit 42 [Conditional Loan approval 12-30-2019]**.)  Approximately $334,500.00 of this was returned in loan fees and prepaid interest to VELOCITY and LENDING BEE. (**Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00]**.)  VELOCITY employee Spencer Farrar evidenced that the closing date of this loan was December 31, 2019 by an email ZOLLIE later discovered Farrar sent on that day wondering why ZOLLIE had not showed up for the "signing."  (**Exhibit 30 [email Spencer Farrar 1-31-2019 (***"I was under the impression that there was a signing today…"***)]**.)  There would be no claims of notarized documents relating to this funding prior to January 9, 2020, not even forged ones, and only **$167,000.00** of this **$1,932,500.00** would eventually

trickle down to ZOLLIE. (**Exhibit 36 [1-9-2020 dep. $105,000.00]**; **Exhibit 37 [2-27-2020 dep. $62,500.00].**)

40.　　On January 2, 2020, unaware of what was going on between ISPEROV and FIERRO, and not realizing that ISPEROV had already refinanced N. Stanley, for **$1,932,500.00,** ZOLLIE was still communicating with LOU ELLEN and BYRON who were now able to offer him a refinance from 5 ARCH for N. Stanley for $2,100,000.00 at 6.99% and a loan on Knoll View for $1,185,750.00 at 6.99%. (**Exhibit 56 [Email LOU ELLEN 1-2-2020 + loan apps].**)

41.　　On January 2, 2020, simultaneously and without involving ZOLLIE, ISPEROV was pitching FIERRO on a second deed of trust for between *$75,000,00 and $100,000.00* which would become **Loan #2** which FIERRO wanted to go directly to the escrow for Knoll View to insure her commission for that sale. (**Exhibit 27 [Letter of Intent 2nd DOT N. Stanley 1-2-2020]; Exhibit 41 [Borrowers Est. Loan #2 (**Loan # HM20200124004) **1-29-2020/ $135,000.00].**)

42.　　On January 6, 2020, prior to ISPEROV even meeting ZOLLIE, FIERRO and ISPEROV were talking about a loan that had already closed for **$1,967,750.01** and a potential second deed of trust for $80,000.00. (**Exhibit 11 [email Isperov to FIERRO 1-6-2020 + attached Borrowers Statement].**)

43.　　On January 7, 2020, FIERRO brought ZOLLIE to meet ISPEROV for the first time at the Starbucks near N. Stanley with the purpose of refinancing N. Stanley to get ZOLLIE the $400,000.00 ISPEROV was promising. (**Exhibit 10**

**[email Isperov 1-7-2020 (*"Nice to meet you today…"*)].**)  ISPEROV had brought a loan application with him to the meeting and showed ZOLLIE a Uniform Residential Loan Application (1003) for a conventional loan for <u>$1,880,000.00</u> that was for 360 months at a fixed rate of 5% hat showed ZOLLIE getting net proceeds of <u>$400,000.00</u>. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**)  FIERRO watched as ISPEROV waived the application in front of ZOLLIE who saw that this was better than what LOU ELLEN and BYRON were offering him and would have been enough to finish renovating N. Stanley ($250,000.00) *and* a downpayment for Knoll View ($135,000.00).[4] (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**) The terms that ISPEROV baited ZOLLIE with were reasonable given ZOLLIE's assets and credit *especially* since ZOLLIE had already increased the value of N. Stanley to approximately $2.2M through his renovations, even as they were yet unfinished, and had an appraisal that predicted his changes would increase the value to approximately $2,850,000.00. (**Exhibit 34 [Appraisal N. Stanley 7-21-2019].**) The Loan Application appeared legitimate to ZOLLIE since it showed that N. Stanley was his primary residence and that the purpose of the refinance was to

---

[4] The proposed new loan for N. Stanley was to be $1,880.000.00 (**Exhibit 8**), less the existing debt of $1,456,000.00 (**Exhibit 2**) is $424,000.00 and Zollie reasonably expected to get $400,000.00.

make repairs. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**)

44.     On January 7, 2020, ZOLLIE left the meeting with ISPEROV knowing nothing about VELOCITY, or the first that had been incurred in his name, and believing that the loan application ISPEROV showed him was an actual application for a refinance on N. Stanley. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**)

**45.**     On January 7, 2020, later that day, ISPEROV sent FIERRO  an email summarizing the meeting and proposing completely different terms for **Loan #1** as well as a proposed second deed of trust against N. Stanley for $120,000.00 right *after the first loan closed*. (**Exhibit 10 [email Isperov 1-7-2020 ("*Nice to meet you today…*")].**) Later that same day ISPEROV sent another email to FIERRO with an attached borrower's statement that showed a loan amount of $1,967.750.01 for **Loan #1** with a disbursement to ZOLLIE of $100,666.21, both of these proposals being radically different than the loan application with which he had baited ZOLLIE. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00]; Exhibit 11 [email Isperov to FIERRO 1-6-2020 + attached Borrowers Statement].**)

**46.**     Around January 8, 2020, ISPEROV sent representatives from his "investor" to N. Stanley for an appraisal inspection which ZOLLIE believed was pursuant to

his application. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**)

47.     On January 9, 2020, VELOCITY recorded **<u>Loan #1</u>** to ZOLLIE in the amount of $1,762,500.00 at 10.99% per annum for a term of 12 months (1-year balloon) against N. Stanley via a forged Deed of Trust. (**Exhibit 12 [DOT Velocity $1,762,500.00].**)  ZOLLIE never signed a promissory note for this deed of trust and still believed he was being considered for the loan application ISPEROV had showed him.

48.     Prior to January 9, 2020, VELOCITY and/or ISPEROV did not give ZOLLIE any TILA or Reg. Z disclosures as required under 15 U.S.C. §1601, et seq since they had switched him into a 1 year hard money loan at 10.99% interest via a bait and switch tactic – or in this case a switch and then the bait. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00]; Exhibit 12 [DOT Velocity 1-9-2020/ $1,762,500.00].**)

49.     On January 9, 2020, VELOCITY transferred $105,000.00 into ZOLLIE's account which ISPEROV told ZOLLIE was an advance prior to the loan funding - "…$100k on hands now." (**Exhibit 11 [Email 1-6-2020]; Exhibit 36 [1-9-2020 dep $105,000.00].**)  At this point, ZOLLIE had still not signed *anything* pursuant to a refinance by ISPEROV.

**50.** On January 20, 2020, ZOLLIE paid $75,000.00 of the $105,000.00 towards his down payment on Knoll View, gave $10,000.00 back to FIERRO and used the remaining $20,000.00 to pay workers at N. Stanley.

**51.** On January 30, 2020 FIERRO and LENDING BEE employee Rico DiCenso (DiCENSO) were secretly working to fund a second on N. Stanley and discussing whether FIERRO could DocuSign ZOLLIE's signature or whether it had to be signed "by hand." (**Exhibit 57 [Email 1-30-2020 Fierro & DiCenso]**.)

**52.** On January 29, 2020, ISPEROV provided an estimated borrower statement (loan # HM20200124004) which showed a 2nd deed of trust on N. Stanley for $135,000.00 even though the original *Letter of Intent* for this second on N. Stanley had been for a second between *$75,000.00 to $100,000.00*. (**Exhibit 27 [Letter of Intent 2nd DOT N. Stanley 1-2-2020 (**$75,000.00 - $100,000.00**)]; Exhibit 41 [Borrowers Est. Loan #2 (**Loan # HM20200124004) **1-29-2020/ $135,000.00**].)

**53.** On February 3, 2020, continuing to secretly work her deal for the purchase of Knoll View, FIERRO emailed ISPEROV to ensure that $135,000.00 from the second on N. Stanley would go directly to the purchase of Knoll View which needed $15% down on a purchase price of $1,400,000.00. (**Exhibit 38 [Email Fierro/ James Lough/ Jenny Kim 2-3-2020 p. 25/30 (***authorizing Lough to send $135,000.00 to Knoll View Escrow)***].)

**54.** On February 7, 2020, **Loan #2** (loan # HM20200124004) which had been first proposed as a small second against N. Stanley for between $75,000.00 and

$100,000.00, when then grew to a second for **$135,000.00** also against N. Stanley only, now funded as a second for **$1,411,819.27** that was cross-collateralized between N. Stanley *and* California Street. (**Exhibit 27 [Letter of Intent 2nd DOT N. Stanley 1-2-2020** ($75,000.00- $100,000.00)**]; Exhibit 41 [Borrowers Est. Loan #2** (Loan # <u>HM20200124004</u>) **1-29-2020/ $135,000.00]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # <u>HM20200124004</u>) **N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens <u>and</u> Z Real Estate* 2-7-2020/ $1,411,819.27]**.)  According to the final HUD Borrower Statement this loan closed on February 26, 2020. (**Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # <u>HM20200124004</u>) **N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens <u>and</u> Z Real Estate* 2-7-2020/ $1,411,819.27]**.)

**55.**     Around February 10, 2020, after **Loan #2** had funded, ISPEROV called and told ZOLLIE that he had *a loan* for him which ZOLLIE believed was the first loan to refinance N. Stanley and purchase Knoll View.  ISPEROV told ZOLLIE he would be sending a notary with documents to sign.

**56.**     On February 13, 2020 Defendant (notary) Pakhomava came to the house of ZOLLIE's friend Danielle Duruso (DANIELLE) in Glendale with documents. ZOLLIE signed POKHOMOVA's notary book and began signing, believing the documents to be loan applications to borrow against N. Stanley and buy Knoll View and that they corresponded to the loan application ISPEROV had

first shown him at Starbucks on January 9, 2020. **(Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00]**.) When Pakhomava refused to give him copies of the documents DANIELLE told him to stop signing and ZOLLIE stopped signing even though ISPEROV was on speaker phone telling him to sign and not to bother about copies.

**57.**     On February 16, 2020, Pakhomava returned, this time to N. Stanley where ZOLLIE was again with DANIELLE and ISPEROV was again on speaker phone telling ZOLLIE he had made a "small mistake" on the loan documents from the previous time and that Pakhomava had with her some "replacement documents" that "did not change the loan." ZOLLIE again signed the notary book but when Pakhomava again refused to give him copies, ZOLLIE again stopped signing documents.

**58.**     On February 16, 2020, Pakhomava left N. Stanley and ZOLLIE alleges on information and belief that ISPEROV and DORFMAN or others under their control went on to forge his signature or cause his signature to be forged on several documents relating to **Loan #2** and **Loan #3** just as they had with **Loan #1**. **(Exhibit 26 [Chang email 12-21-22+forged loan disclosures p. 11/ 14]; Exhibit 19 [Document Examiner Report]**.) On one page, the VELOCITY loan application for **Loan #1** falsely claims that ZOLLIE's income was $35,000.00 per month. **(Exhibit 26 [Chang email 12-21-22+forged loan disclosures]**.)  In some places the loan terms for **Loan #1** are 12 months at 10.990%. **(Exhibit 26 [Chang**

**email 12-21-22+forged loan disclosures p. 3/14]; Exhibit 42 [Conditional Loan approval 12-30-2019]; Exhibit 35 [Velocity amendment 1-7-2020]**.) In another place the loan terms for **Loan #1** are 24 months at 10.999%. (**Exhibit 35 [Velocity amendment 1-7-2020]**.)  In the VELOCITY loan documents, Defendants falsely name the California Street investment property as ZOLLIE's home address,. (**Exhibit 26 [Chang email 12-21-22+forged loan disclosures p. 8/14]**.) In another place they say that California Street is paid in full ("free and clear"). (**Exhibit 26 [Chang email 12-21-22+forged loan disclosures] p. 17/17**.) They have ZOLLIE making $35,000.00 per month. (**Exhibit 26 [Chang email 12-21-22+forged loan disclosures]**.)  ZOLLIE is purported to have received and signed these loan disclosures on January 7, 2020, two days before January 9, 2020, the day he first met ISPEROV. (**Exhibit 26 [Chang email 12-21-22+forged loan disclosures]**.)

**59.**     On February 19, 2020, VELOCITY gave ZOLLIE another $62,000.00 which ZOLLIE used for his renovation of N. Stanley, which ZOLLIE still believed to be advances prior to the loan funding. (**Exhibit 37 [2-27-2020 dep. $62,500.00]**.)  This brought the total of payments from ISPEROV to ZOLLIE on **Loan #1** to $167,000.00 which would be all that ZOLLIE would receive from that loan. (**Exhibit 36 [1-9-2020 dep. $105,000.00]**; **Exhibit 37 [2-27-2020 dep. $62,500.00]**.)

**60.**     On February 20, 2020 FIERRO sent loan documents with Xs for Zollie to sign next to for a loan for $1,400,000.00 that appeared to be a first for Knoll View,

but which falsely listed ZOLLIE's home address as California Street, just as the forged LENDING BEE loan applications had done. (**Exhibit 26 [Chang email 12-21-22+forged loan disclosures p. 8/14]; Exhibit 58 [Email 2-20-2020 Fiero-to-Zollie]**.)  That same day, FIERRO attempted to get ZOLLIE to sign a floating signature page for an indemnification without any identification of what it was for. (**Exhibit 59 [Email 2-20-2020 Fierro-to-Zollie]**.)

61.     On February 21, 2020, IRIDIUM funded **Loan #3** for **$1,552,493.43** and the Buyers Final Settlement Statement shows DOCTOROVICH/ AFD getting a $62,000.00 loan origination fee plus other fees totaling over $70,000.00 even though ZOLLIE never met DOCTOROVICH who could not have brokered the loan for him. (**Exhibit 60 [Buyers Final Statement Knoll View $1,552,493.43 2-21-2020].**)  On February 21, 2020, IRIDIUM recorded **Loan #3** as a one-year hard-money interest-only purchase money loan of **$1,400,000.00** at 10.999% against Knoll View**. (Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note Loan #3 Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75]; Exhibit 13 [DOT Loan #3 Knoll View IRIDIUM to *Z Real Estate*/ $1,400,000.00/ 2-21-2020].**)

62.     On February 21, 2020, escrow for Knoll View closed, with *100% financing* with ZOLLIE incurring a first deed of trust for $1,400,000.00, which was actually for **$1,552,493.43**. (**Exhibit 60 [Buyers Final Statement Knoll View $1,552,493.43 2-21-2020]; Exhibit 13 [DOT Loan #3 Knoll View IRIDIUM to**

*Z Real Estate*/ **2-21-2020/ $1,400,000.00]; Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note <u>Loan #3</u> Knoll View IRIDIUM to** *Z Real Estate* **2-11-2020/ $1,400,000.00 P. 28/ 75].)**

**63.**     By February 21, 2020, ISPEROV and the IRIDIUM Defendants had also switched the amount of **<u>Loan #2</u>** (<u>HM20200124004</u>) from **$135,000.00** to **$1,411,819.27** as was evidenced by the same loan number (<u>HM20200124004</u>) showing up on the Buyers Final statement (February 26, 2020) for **$1,411,819.27** that had originally been on the Estimated Borrower's Statement (January 29, 2020) for **$135,000.00**. **(Exhibit 33 [Final Borrowers Statement (HUD final disclosures) <u>Loan #2</u>** (Loan # <u>HM20200124004</u>) **N. Stanley <u>and</u> California St. IRIDIUM to** *Zollie Stevens* **<u>and</u>** *Z Real Estate* **2-7-2020/ <u>$1,411,819.27</u>]; Exhibit 41 [Borrowers Est. <u>Loan #2</u> (**Loan # <u>HM20200124004)</u> **1-29-2020/ $135,000.00].)** The **$1,411,819.27,** which would be secured by two deeds of trust against two of ZOLLIE's properties (California Street and N. Stanley), was funded by Defendant IRIDIUM and went directly to the IRIDIUM defendants *and FIERRO* and disappeared. **(Exhibit 33 [Final Borrowers Statement (HUD final disclosures) <u>Loan #2</u>** (Loan # <u>HM20200124004</u>) **N. Stanley <u>and</u> California St. IRIDIUM to** *Zollie Stevens* **<u>and</u>** *Z Real Estate* **2-7-2020/ <u>$1,411,819.27</u>];** (**Exhibit 13 [DOT <u>Loan #3</u> Knoll View IRIDIUM to** *Z Real Estate*/ **2-21-2020/ $1,400,000.00]; Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory**

Note **Loan #3** Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].)

**64.**     On February 21, 2020, unaware that he had paid for it twice, ZOLLIE purchased 29865 Knoll View Drive Rancho Palos Verdes California 90275 for $1.430,000.00 with a deed of trust to IRIDIUM for $1,400,000.00, now as Z Real Estate Holdings. (**Exhibit 13 [DOT Loan #3 Knoll View IRIDIUM to *Z Real Estate*/ 2-21-2020/ $1,400,000.00]; Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note Loan #3 Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].**)  Both the promissory note and deed of trust have the same forged floating signature pages that facilitated the forgeries by the IRIDIUM defendants. (**Exhibit 13 [DOT Loan #3 Knoll View IRIDIUM to *Z Real Estate*/ 2-21-2020/ $1,400,000.00]; Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note Loan #3 Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].**)  From this $1,400,000.00, ZOLLIE got $1,262.00. (**Exhibit 39 [Email James Lough 2-27-2020]**.)

**65.**     On February 21, 2020, the final HUD documents for Knoll View show no line item for FIERRO's sales commission, or the return of her **$41,850.00** earnest money, leading ZOLLIE to allege that she was paid from **Loan #2**. (**Exhibit 60 [Buyers Final Statement Knoll View $1,552,493.43 2-21-2020]; Exhibit 15 [Fierro email 9-11-2022 w/ fake DocuSign+ check as attachments]**.)

**66.**     On or about February 22, 2020, N. Stanley was almost finished and Covid-19 pandemic had just started so ZOLLIE moved quickly into Knoll View to start renovating that property.   On August 11, 2020 ZOLLIE began renting N. Stanley for between $10,000.00 to $20,000.00 per month through Air B&B and also to Paramount Studios.

**67.**     On February 25, 2020, shortly after Knoll View funded, the double talk about the loans and payment amounts intensified with Lending Bee employee DiCENSO intentionally confusing **Loan #1** (N. Stanley), **Loan #2** (N. Stanley and California Street), and **Loan #3** (Knoll View), by telling FIERRO and ZOLLIE that ZOLLIE had _one_ new loan encumbering all three properties:

> "*He has 1 new payment for the new $1,400,000 loan. The loan encumbers all 3 properties, but only 1 payment. The current payments he had on those properties remains the same. He will now have an additional payment of $12,821.67 to Iridium LLC for the $1,400,000 for Knoll View.*" (**Exhibit 23 [DiCenso email 2-25-2020].**)

**68.**     On February 25, 2020, DiCENSO told ZOLLIE that he had _two_ loans without identifying the lenders, which DiCENSO described as:

> **"*Knoll View & 2015 California St -*** *$1,400,000 loan amount, 10.99% rate, $12,821.67 monthly payment,*" and
> **"*1541 N. Stanley-*** *$1,820,000 loan amount, 9% rate, current payment should be $13,650 monthly.*" (**Exhibit 23 [DiCenso email 2-25-2020].**)

**69.** On February 25, 2020, this "statement" of ZOLLIE's mortgage payments gave the funding amount for **Loan #1** as **$1,820,000.00** (when it was actually for $1,932,500.00) and the interest rate for **Loan #1** as 9% when it was actually 10.99%. (**Exhibit 23 [DiCenso email 2-25-2020].**) The payment for N. Stanley was $19,745.00 per month not $13,650.00. (**Exhibit 29 [NOD N. Stanley 8-17-2020 (*demanding $118,470.39 for six months*)].**) This "statement" also made up a new loan, which was neither **Loan #2** or **Loan #3**, but a conglomerate of both which said it was for "Knoll View & 2015 California Street. (**Exhibit 23 [DiCenso email 2-25-2020].**).

**70.** On February 26, 2020, **Loan #2**, which had been disbursed on February 7, 2020, closed. (**Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley _and_ California St. IRIDIUM to *Zollie Stevens* _and_ *Z Real Estate* 2-7-2020/ $1,411,819.27].**)

**71.** On February 26, 2020, IRIDIUM recorded a deed of trust for **Loan #2** for $1,400,000.00 in Los Angeles County. (**Exhibit 22 [2-26-2020 DOT (Loan #2/LA) N. Stanley/ Calif. $1,411,819.27].**) On February 26, 2020, IRIDIUM also recorded a deed of trust for **Loan #2** for $1,400,000.00 in Orange County. (**Exhibit 21 [DOT (Loan #2) Orange County 2-26-2020].**) Both extremely long and detailed (40+pages) deeds of trust are careful to say they are cross-collateralized between N. Stanley (parcel A) and California Street (parcel B), careful to identify both APN numbers, and careful to identify the trustor as *Zollie Stevens* for parcel A

and *Z Real Estate* for parcel B. (**Exhibit 22 [2-26-2020 DOT (Loan #2/LA) N. Stanley/ Calif. $1,411,819.27]; Exhibit 21 [DOT (Loan #2) OC 2-26-2020].**) What neither deed of trust says is that ISPEROV, DORFMAN, LENDING BEE, AFD, DOCTOROVICH, and IRIDIUM had funded the money directly unto themselves.

**72.** On February 26, 2020, the floating signature page on the deeds of trust for **Loan #2** recorded in Los Angeles and Orange County purport to be notarized on February 13, 2020, when **Loan #2** had funded six days prior on February 7, 2020. (**Exhibit 22 [2nd DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-26-2020/ LA/ $1,400,000.00]; Exhibit 21 [2nd DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-26-2020/ OC/ $1,400,000.00]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-7-2020/ $1,411,819.27].**) The promissory note (also with a floating signature page) is dated February 11, 2020 which is also four days after **Loan #2** had funded. (**Exhibit 48 [Promissory Note Loan #2 2nd DOT N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-11-2020 $1,400,000.00]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-7-2020/ $1,411,819.27].**)

73.     On February 27, 2020, FIERRO sent amended escrow instructions for **Loan #2** (HM20200124004) to ZOLLIE to sign by DocuSign which now were for $1,411,819.27 instead of $135,000.00, and were also for a loan that had funded on February 7, 2020 and closed on February 26, 2020. (**Exhibit 20 [DocuSign 2-26-2020 Fiero to Zollie + Escrow amendments].**) Although FIERRO knew this was the secret second that went straight to ISPEROV and the LENDING BEE defendants, she led ZOLLIE to believe this was his first deed of trust on Knoll View since the $1,411,819.27 was the same as he was paying for Knoll View. (**Exhibit 20 [DocuSign Zollie 2-27-2020].**)  ZOLLIE's "conditional loan approval" was purportedly forged on February 11, 2020. (**Exhibit 19 [Document Examiner Report p. 9/17]**.)

74.     Beginning in March, once he was moved into Knoll View, ZOLLIE kept asking DiCENSO to send him his loan documents for N. Stanley and on March 9, 2020, DiCENSO sent him his *Borrower Statement (estimated)* for N. Stanley and many other documents including a promissory note with a floating signature page with a forged signature. (**Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note Loan #3 Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75]**.) It was around this time that DiCENSO also sent ZOLLIE the original loan application that ISPEROV had baited ZOLLIE with at the meeting two months earlier at Starbucks. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**) Three

years later when he requested his promissory note from VELOCITY, ZOLLIE would receive an unsigned note from VELOCITY employee Bruce Kallaher. (**Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00 12-30-2019].**) These forged documents showed California Street as ZOLLIE's home, which he had *just* refinanced as *Z Real Estate* and which he had no incentive to claim as his home on a home loan application for N. Stanley. (**Exhibit G [DOT PS Funding to *Z Real Estate* $976,000.00 California St./ OC/ 12-11-2019**]; **Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note <u>Loan #3</u> Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].**) After he received the email and documents from DiCENSO, ZOLLIE confronted ISPEROV and told him *"these are not my signatures!"*

75.     On or about March 2020, ISPEROV sent ZOLLIE his purported loan documents for Knoll View Drive which also had fake signatures, including one misspelling his name as "Z-E-L-L-E." (**Exhibit 19 [Doc. Examiner Report p. 9/17].**)  In another instance the documents are dated September 4, 2018, almost two years before the transaction. (**Exhibit 19 [Doc. Examiner Report p. 13/17].**)

76.     On or around March 15, 2020, ZOLLIE called ISPEROV continuing to demand the rest of the money for the first deed of trust they had funded on N. Stanley. (**Exhibit 28 [email 12-11-2020 + final HUD <u>Loan #1</u> N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $<u>1,932,500.00</u>].**) ZOLLIE had been calling ISPEROV regularly and coming by the Lending Bee office to ask for his

money, but this time ZOLLIE was adamant and ISPEROV came by to "walk-through" N. Stanley.  ISPEROV still continued to promise ZOLLIE he would get the rest of his money, but this did not occur.

77.    On or around March 30, 2020, ISPEROV called ZOLLIE and told him he needed to pay $13,000.00 per month for "Knoll View."  ZOLLIE asked who he was to pay, but ISPEROV evaded answering and would only say it was "an investor." This continued for the next months as ZOLLIE was asking ISPEROV for his money and ISPEROV was asking ZOLLIE for money. Meanwhile ZOLLIE was actively trying to refinance both Knoll View and N. Stanley with a new lender to get away from ISPEROV and his "*investors*."

78.    On April 24, 2020, Spencer Farrar, VELOCITY account executive emailed ZOLLIE and included an attached Borrower's statement which showed that the VELOCITY **Loan #1** funded on December 27, 2019. (**Exhibit 31[Email Farrar 4-24-2020 + Est. Borrowers Statement**].)

79.    On June 18, 2020, IRIDIUM recorded a Notice of Default with the Orange County Recorder against California Street for **Loan #2**. (**Exhibit 16 [NOD California St./ IRIDIUM 6-18-2020/ OC/ $77,659.50].)**  To further continue the confusion, this Notice of Default identified the borrower as *Z Real Estate Holdings LLC,* and the loan number only as "California." (**Exhibit 16 [NOD California St./ IRIDIUM 6-18-2020/ OC/ $77,659.50].)**  On June 19, 2020, IRIDIUM recorded a Notice of Default with the Los Angeles County Recorder against N. Stanley which

was also for **Loan #2**. (**Exhibit 17 [NOD N. Stanley/ IRIDIUM/ 6-19-2022/ $77,659.50].**) This Notice of Default identified the borrower as *Zollie Stevens* and the loan number only as "Stanley." (**Exhibit 17 [NOD N. Stanley/ IRIDIUM/ 6-19-2022/ $77,659.50].**) By these two Notices of Default, IRIDIUM was claiming arrears of **$77,659.50** on the **$1,411,819.27** IRIDIUM had funded back to ISPEROV, DORFMAN, LENDING BEE, AFD, DOCTOROVICH, and IRIDIUM and which they had hidden from ZOLLIE, but which he now became aware of. (**Exhibit 16 [NOD California St./ IRIDIUM 6-18-2020/ OC/ $77,659.50]; Exhibit 17 [NOD N. Stanley/ IRIDIUM/ 6-19-2022/ $77,659.50]; Exhibit 22 [2nd DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-26-2020/ LA/ $1,400,000.00]; Exhibit 21 [2nd DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-26-2020/ OC/ $1,400,000.00].**)

80.     On June 19, 2020, IRIDIUM also recorded a Notice of Default against Knoll View claiming arrears of arrears of **$77,659.50** on the deed of trust for Knoll View. (**Exhibit 18 [NOD IRIDIUM Knoll View 6-19-2020/ $77,659.50].**)

81.     On July 8, 2020, ZOLLIE got his first demand for payment which was not a mortgage bill, but a reinstatement which listed the loan number only as "Knoll." (**Exhibit 24 [Reinstatement "Knoll" 7-31-2020].**) For four months of payments, IRIDIUM was demanding $126,834.80 which was $22,155.00 per month. (**Exhibit 24 [Reinstatement "Knoll" 7-31-2020].**)

**82.**     On August 4, 2020, the VELOCITY Defendants assigned **<u>Loan #1</u>**, and its security instruments and deed of trust, to Defendant U.S. BANK NATIONAL ASSOCIATION, as Indenture Trustee for VCC 2020 MCl Trust. (**Exhibit 61 [Assignment DOT <u>Loan #1</u> 8-4-2020]**)

**83.**     Also in August, ZOLLIE was actively trying to refinance **<u>Loan #1</u>** (N. Stanley) and **<u>Loan #3</u>** (Knoll View) with another mortgage broker Arda Hagopian (ARDA). (**Exhibit 43 [email 8-21-2020 + attachments]**.)

**84.**     On August 17, 2020, VELOCITY recorded a Notice of Default against Stanley for **<u>Loan #1</u>** demanding <u>$118,470.39</u> for the prior 6 months, finally clarifying that the actual loan payments were approximately <u>$19,745.00</u> per month (<u>$19,745.00</u> x 6 = <u>$118,470.39</u>). (**Exhibit 29 [NOD (<u>Loan #1</u>) N. Stanley for <u>$118,470.39</u>/ 6-19-2022].**)  On August 18, 2020, ZOLLIE made a <u>$91,608.65</u> payment to the trustee to reinstate all three loans and the trustee responded: "We are closing the file," but this money was not applied to any loans. (**Exhibit 50 [email trustee 1-3-2023 & payment $91,608.65 from Zollie]**.)

**85.**     On August 21, 2020, in a continued effort to blur the three loans, IRIDIUM did not use loan numbers when they wrote to ZOLLIE that the Notices of Default against "Stanley" (LACR # 20200671159/ **Exhibit 17**), "Knoll" (OCCR# 20200671052/ **Exhibit 18**), and "California" (LACR # 2020000282913/ **Exhibit 16**) were recorded in error and that the loans were current. (**Exhibit 51 [Three**

**letters from IRIDIUM to Zollie 8-21-2020]**.)  ISPEROV wrote substantially the same thing to ARDA. (**Exhibit 43 [email 8-21-2020 + attachments]**.)

86.    In September and October 2020, still trying to refinance and save Knoll View, ZOLLIE made two mortgage payments to AFD/ DOCTOROVICH for $12,821.67 each for Knoll View Drive. (**Exhibit 52 [Check to AFD $12,821.00 9-10-2020]**.)  N. Stanley had appreciated enough by ZOLLIE's improvements and increased real estate values for BYRON to be able to refinance **Loan #1** in the amount of $1,948,000.00 and ZOLLIE wanted to get away from ISPEROV, the LENDING BEE Defendants and ISPEROV's *investors*, but ISPEROV would not communicate with ARDA to allow ZOLLIE to satisfy the first on N. Stanley to VELOCITY. (**Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley** and **California St. IRIDIUM to** *Zollie Stevens* **and** *Z Real Estate* **2-7-2020/ $1,411,819.27]; Exhibit 48 [Promissory Note Loan #2 2nd DOT N. Stanley** and **California St. IRIDIUM to** *Zollie Stevens* **and** *Z Real Estate*  **2-11-2020 $1,400,000.00]; Exhibit 54 [approval letter Byron/ N. Stanley 12-22-2020].**)

87.    In September 2, 2020, IRIDIUM rescinded the Notice of Default against California Street. (**Exhibit 44 [Rescission NOD 9-2-2020].**)

88.    By November 2020, ZOLLIE called his friend Renee Victoria Vaughn (VICTORIA) who worked as an underwriter for HUD for help and by separately questioning the escrow officers Jenny Kim (West Coast Escrow) and James Lough

(Greater LA Escrow) VICTORIA realized that neither had received the $1,400,000.00 for **Loan #2**. (**Exhibit 53 [12-23-2020 email from Victoria].**) Lough told VICTORIA that the funding for **Loan #2** had bypassed him and gone directly to Kim. (**Exhibit 53 [12-23-2020 email from Victoria 2-3/8 & 5/8].**) Kim told VICTORIA that $1,400,000.00 was never wired to her escrow. (**Exhibit 53 [12-23-2020 email from Victoria 7-8/8].**) Lough also told Victoria that **Loan #2** had been for **$1,411,819.27** and that Greater LA Escrow was holding onto a check for ZOLLIE in the amount of **$1,262.00**. (**Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-7-2020/ $1,411,819.27]; Exhibit 39 [email J. Lough 2-27-2020].**)

89.    On December 4, 2020, VELOCITY recorded a Notice of Trustee's Sale for **Loan #1** against N. Stanley demanding repayment in the amount of $2,000,710.40 with a sale date of December 30, 2020. (**Exhibit 25 [Notice of Trustee's Sale Loan #1 N. Stanley 12-4-2020].**)

90.    On December 11, 2020, ISPEROV sent the final N. Stanley HUD disclosures to ZOLLIE. (**Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00].**)

91.    On December 12, 2020, IRIDIUM recorded a Notice of Default for **Loan #3** against Knoll View demanding $77,556.50. (**Exhibit 32 [NOD 12-12-2020].**)

**92.**     On February 26, 2021, ZOLLIE filed a Chapter 11 Bankruptcy which was Case No. 2:21-bk-11529-BR (the Stevens Chapter 11) .

**93.**     On March 9, 2021, ZOLLIE filed a Chapter 11 Petition on behalf of Z Real Estate Case no. 2:21-bk-12171-BR (the Z Real Estate Chapter 11) which was confirmed on February 14, 2022.  It was sometime after this, that IRIDIUM provided the trustee with the forged promissory note for **Loan #2**. (**Exhibit 48 [Promissory Note Loan #2 2nd DOT N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate*  2-11-2020 $1,400,000.00].**)

**94.**     Around July 2021, ZOLLIE heard from his mother in Detroit that she had cancer and he brought her out to California and spent the next months not leaving her side.  During this time ZOLLIE's bankruptcy attorney Michael Turturro was pressuring ZOLLIE to sell California Street, Knoll View, and N. Stanley even as ZOLLIE was pleading for an opportunity to tell the trustee that **Loan #1** was forged and fraudulent, that he had not received the bulk of the refinanced portion of **Loan #1,** and that he had not received any money *at all* for **Loan #2**. Under duress, and completely focused on caring for his mother, ZOLLIE agreed to sell Knoll View and California Street.

**95.**     On October 7, 2021, the bankruptcy trustee Mark Sharp sold Knoll View for $2,100,000.00, largely based on the improvements ZOLLIE had made to the property, and satisfied **Loan #3** along with the arrears to IRIDIUM.

**96.**     On October 15, 2021, knowing that California Street was next to be sold, with N. Stanley to follow shortly after, and knowing that their fraudulent second deed of trust would soon be at issue, IRIDIUM hurriedly wiped out **<u>Loan #2</u>** for $1,400,000.00 against N. Stanley. (**Exhibit 64 [Reconveyance 10-15-2021 N. Stanley/ LACR].**)

**97.**     On December 24, 2021, the trustee sold California Street for $1.25 million.

**98.**     On December 27, 2021, ZOLLIE filed a police report for forgery and identity theft.

**99.**     On January 24, 2022, IRIDIUM reconveyed **<u>Loan #2</u>** against California Street. (**Exhibit 63 [Reconveyance California St. OC 1-24-2022].**)

**100.**   On May 16, 2022, the Lucille Manor apartments were sold at a Sheriff's Sale for $413,944.00. (**Exhibit 40 Sheriff's deed Oakman**)

**101.**   On or about November 8, 2022, ZOLLIE filed a complaint with the DRE and they opened an investigation (*DRE case# 1-21-0412-004 (Lending Bee Inc*).

**102.**   On December 21, 2022, Chang emailed ZOLLIE and attached all of the documents ISPEROV had provided to him including a fake loan application for a hard money loan, also with a fake signature for ZOLLIE and also listing California Street as his home address. (**Exhibit 26 [Chang email 12-21-22+forged loan disclosures 8/14]**.) These documents included a Borrowers' Certification and Authorization dated January 7, 2020 which was a duplicate of a forged document that ISPEROV had previously provided to the bankruptcy court with an address of

September 4, 2018, a year before ZOLLIE even bought N. Stanley, but now with the date changed to January 7, 2020. (**Exhibit 19[Doc. Examiner Rpt. p. 13/ 17]; Exhibit 26 [Chang email 12-21-22+forged loan disclosures p. 1/14]**.)

103.   In late 2022, ISPEROV would claim to the fraud investigator Chang from the DRE that ZOLLIE, on *the first day that he met ISPEROV,* signed a deed of trust before a notary named Ani Kamikyan (KAMIKYAN) for **Loan #1** in the amount of <u>$1,762,500.00</u>. (**Exhibit 12 [DOT Velocity 1-9-2020/ $1,762,500.00].**) This deed of trust has a forged floating signature page which is a part of the jurat. (**Exhibit 12 [DOT Velocity 1-9-2020/ $1,762,500.00].**)  Neither of ISPEROV's follow up "nice to meet you" emails that day say that a notary will be arriving that night, or give any explanation of the loan terms, and ZOLLIE never met this fictional notary on January 7, 2020 or signed a deed of trust or promissory note in front of one. (**Exhibit 12 [DOT Velocity 1-9-2020/ $1,762,500.00]; Exhibit 10 [email Isperov 1-7-2020 (*"Nice to meet you today…"*)]**.)

104.   On February 13, 2023, ZOLLIE called Velocity to get a copy of his promissory note and spoke to Bruce Kallaher (Kallaher).  (**Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-2019]**.) ZOLLIE asked Kallaher to look in the system for his promissory note and Kallaher found an unsigned "Time Note" for **$1,762,500.00** dated December 30, 2019 which he sent to ZOLLIE by email attachment. (**Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-2019]**)

**105.** On February 17, 2023, when ZOLLIE reached out again to Kallaher to ask for a signed copy of this "time note," Kallaher did not respond. (**Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-2019].**)

**106.** On February 20, 2023, ZOLLIE sent a QWR to VELOCITY to see a copy of his promissory note that contained a signature and any and all assignments of his deed of trust and as yet has not received a response. (**Exhibit 45 [QWR VELOCITY 2-20-2023].**)

### FIRST CAUSE OF ACTION
*Violation of the Truth in Lending Act 15 U.S.C.S. §1601 et al*
**(Against ISPEROV, DOCTOROVICH, DORFMAN, AFD &VELOCITY)**

**107.** Plaintiff hereby alleges and incorporates herein by reference, each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

108. On January 7, 2020, ISPEROV baited ZOLLIE by showing him a Uniform Residential Loan Application by ISPEROV and LENDING BEE. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**) This loan applications shows (a) a loan amount of $1,880,000 for 360 months at 5.0% fixed interest rate which was a reasonable interest rate at that time, (b) that the N. Stanley Property was the primary residence of the borrower, and (c) that the purpose of the loan was for repairs to the N. Stanley Property. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**)

109.   On January 7, 2020 ISPEROV had already funded **Loan #1** as a "business purposes" loan by identity theft and forged documents that claimed California Street as ZOLLIE's primary residence. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan App. N. Stanley/ 1-9-2020/ $1,880,000.00]; Exhibit 026 [forged loan disclosures] p. 9/14].**)   ISPEROV and VELOCITY originated **Loan #1** without pre disclosure, approval, or a 3-day Notice of Right to Cancel provided to ZOLLIE and then knowingly created false loan documents for **Loan #1** either before or after the fact. (**Exhibit 026 [forged loan disclosures] p. 9/14].**) The Lenders knew that these statements were false, that N. Stanley was ZOLLIE's primary residence, and that the loan proceeds were to be used for repairs and renovations to a primary residence. (**Exhibit 026 [forged loan disclosures] p. 9/14].**)

110.   During the time between December 31, 2019 and January 9, 2020, in a criminal attempt to circumvent Federal TILA and Reg. Z rules, and defraud ZOLLIE,  the VELOCITY Defendants *did not give ZOLLIE* any Truth in Lending Act ("TILA") or Reg. Z disclosures, as required under 15 U.S.C. § 1601, et seq., and specifically sections 1602, 1604, 1611, 1631, 1632, 1635, 1637, 1637a, 1638, 1639, 1639b, 1639c, 1639d, 1639e, and as regulated under12 CFR Parts 1026.1- 4, 17-43, for refinance mortgages secured by the borrower's primary residence.

111.   Also in a criminal attempt to not just avoid TILA and Reg Z disclosures, but also to gut ZOLLIE's equity and force him into foreclosure, the IRIDIUM

Defendants stole **$1,411,819.27** by **Loan #2** which was cross-collateralized against N. Stanley and ZOLLIE's rental property California Street, no portion of which was disbursed to ZOLLIE. (**Exhibit 22 [2nd DOT Loan #2 N. Stanley and California St. IRIDIUM to** *Zollie Stevens* **and** *Z Real Estate* **2-26-2020/ LA/ $1,400,000.00]; Exhibit 21 [2nd DOT Loan #2 N. Stanley and California St. IRIDIUM to** *Zollie Stevens* **and** *Z Real Estate* **2-26-2020/ OC/ $1,400,000.00]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley and California St. IRIDIUM to** *Zollie Stevens* **and** *Z Real Estate* **2-7-2020/ $1,411,819.27]; Exhibit 48 [Promissory Note Loan #2 2nd DOT N. Stanley and California St. IRIDIUM to** *Zollie Stevens* **and** *Z Real Estate* **2-11-2020 $1,400,000.00].**)

112.   ZOLLIE alleges on substantial evidence that **Loan #1** actually funded on December 31, 2019 in the amount of **$1,932,500.00** at **10.99% with a 1-year term** prior to any documents, forged or otherwise, being signed. (**Exhibit 30 [email Spencer Farrar 1-31-2019 (***"I was under the impression that there was a signing today…"***)]; Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to** *Zollie Stevens* **1-9-2020/ $1,932,500.00].**)

113.   ZOLLIE also alleges that **Loan #2,** which had a floating signature jurat page on the deed of trust notarized on February 13, 2020 and a Promissory Note dated February 11, 2020, had actually funded on February 7, 2020 prior to any documents, forged or otherwise, being signed. (**Exhibit 22 [Second DOT Loan #2**

**N. Stanley _and_ California St. IRIDIUM to _Zollie Stevens_ _and_ _Z Real Estate_ 2-26-2020/ LA/ _$1,400,000.00_]; Exhibit 21 [Second DOT _Loan #2_ N. Stanley _and_ California St. IRIDIUM to _Zollie Stevens_ _and_ _Z Real Estate_ 2-26-2020/ OC/ _$1,400,000.00_]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) _Loan #2_ (Loan # _HM20200124004_) N. Stanley _and_ California St. IRIDIUM to _Zollie Stevens_ _and_ _Z Real Estate_ 2-7-2020/ _$1,411,819.27_]; Exhibit 48 [Promissory Note _Loan #2_ 2nd DOT N. Stanley _and_ California St. IRIDIUM to _Zollie Stevens_ _and_ _Z Real Estate_  2-11-2020 _$1,400,000.00_].)**

114.    The damages that ZOLLIE suffered because of **_Loan #1_**, were the loss of millions of dollars in equity in N. Stanley, California, and the Lucille Manor apartments in Detroit, that were sold by the trustee in his Chapter 11 bankruptcy which were the assets of his business.  ZOLLIE also lost the rental income from the Lucille Manor Apartments in Detroit, California Street, and N. Stanley for which the Chapter 11 Bankruptcy Court removed all tenants prior to dismissing his Chapter 11 and releasing N. Stanley back to ZOLLIE without prejudice to file this action.  All of the events that led up to ZOLLIE's bankruptcy began because of the bait and switch by ISPEROV whereby ZOLLIE was stuck in a loan for **$1,932,500.00** which increased his debt by _$476,500.00_ out of which he received_$167,000.00_. (**Exhibit 2 [DOT Arch 5 to _Zollie Stevens_/ N. Stanley/ 8-13-2019/ $1,456,000.00]; Exhibit 28 [email 12-11-2020 + final HUD _Loan #1_ N. Stanley VELOCITY to _Zollie Stevens_ 1-9-2020/ _$1,932,500.00_]; Exhibit 36 [1-**

**9-2020 dep. $105,000.00**]; **Exhibit 37 [2-27-2020 dep. $62,500.00]; Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note <u>Loan #3</u> Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].**)

115.   The damages that ZOLLIE incurred because of **<u>Loan #2</u>** was the foreclosure he was forced into for a loan he never received funds for. (**Exhibit 16 [NOD California St./ IRIDIUM 6-18-2020/ OC/ <u>$77,659.50</u>]; Exhibit 17 [NOD N. Stanley/ IRIDIUM/ 6-19-2022/ $77,659.50].**)   These Notices of Default caused ZOLLIE to have to file a Chapter 11 Bankruptcy where he was forced to sell Knoll View and California Street.

116.   ZOLLIE lost rental income from California Street is approximately $9,000.00 per month, from the Lucille Manor apartments is approximately $9,000.00 per month, and from the renovated N. Stanley is between $10,000.00 and $20,000.00 per month.   ZOLLIE has also suffered the loss of his credit, and the loss of his well-deserved reputation as a creative rehabber.

**<u>SECOND CAUSE OF ACTION</u>**
*Fraud & Conspiracy to Commit Fraud*
**(Against ISPEROV, FRED DOCTOROVICH,
ANATOLY DOCTOROVICH, DORFMAN, AFD, LENDING BEE,
VELOCITY, IRIDIUM & FIERRO)**

**117.**   Plaintiff hereby alleges and incorporates herein by reference, each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

**118.** The elements of fraud are (1) the defendant made a false representation as to a past or existing material fact; (2) the defendant knew the representation was false at the time it was made; (3) in making the representation, the defendant intended to deceive the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered resulting damages. *Lazar v. Superior Court,* 12 Cal.4th 631, 638, 49 Cal.Rptr.2d 377, 909 P.2d 981 (1996).

### *ISPEROV & the VELOCITY DEFENDANTS*

**119.** At the beginning of the **Loan #1** process, ISPEROV *baited* ZOLLIE with the promise of a 5% 30-year fixed rate loan for N. Stanley. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00].**)  ISPEROV intended ZOLLIE to rely on this application and also intended to deceive ZOLLIE since the VELOCITY Defendants had already funded **Loan #1** the week before with a hard money loan at 10.999% for **$1,932,500.00** without a signed promissory note, loan disclosures, or loan application**. (Exhibit 26 [Chang email 12-21-22+forged loan disclosures]; Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00]; Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note Loan #3 Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75]; Exhibit 19 [Doc. Examiner Report].**) This caused ZOLLIE's monthly payment to go from $7,343.75 per month to $19,745.00 per month as referenced by the Notice of Default recorded on August 17, 2020 by VELOCITY against Stanley

for **Loan #1** demanding $118,470.39 for the prior 6 months (6 x $19,745.00 = $118,470.39). (**Exhibit 29 [NOD (Loan #1) N. Stanley for** $118,470.39/ **6-19-2022].**)  Meanwhile, the VELOCITY Defendants kept the benefit of the refinance to themselves by dripping out only $167,000.00 to ZOLLIE. (**Exhibit 36 [1-9-2020 dep. $105,000.00]**; **Exhibit 37 [2-27-2020 dep. $62,500.00].**)  ZOLLIE is informed and thereupon alleges that ISPEROV and the VELOCITY Defendants did this intentionally to force ZOLLIE into foreclosure on N. Stanley.

### *ISPEROV & the IRIDIUM DEFENDANTS*

**120.**   ZOLLIE alleges on information and belief that ISPEROV withheld his payout on **Loan #1** against N. Stanley to intentionally force him into default, to prevent him from refinancing away from VELOCITY, and to keep him from discovering **Loan #2** for **$1,411,819.27** which ISPEROV and the IRIDIUM Defendants had funded to themselves and which they then used to pressure ZOLLIE into foreclosure on three properties.  (**Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley and California St. IRIDIUM to *Zollie Stevens and Z Real Estate* 2-7-2020/ $1,411,819.27]; Exhibit 48 [Promissory Note Loan #2 2nd DOT N. Stanley and California St. IRIDIUM to *Zollie Stevens and Z Real Estate* 2-11-2020 $1,400,000.00]; Exhibit 16 [NOD California St./ IRIDIUM 6-18-2020/ OC/ $77,659.50]; Exhibit 17 [NOD N. Stanley/ IRIDIUM/ 6-19-2022/ $77,659.50].**)

121.    In Summer and Spring of 2020, as real estate prices shot up and ZOLLIE was able to pay off the full **$1,932,500.00** for **Loan #1** on N. Stanley, ISPEROV would not communicate with ZOLLIE or BYRON or ARDA to allow ZOLLIE to refinance because it would have thwarted ISPEROV and the IRIDIUM Defendants' plans to foreclose on N. Stanley and California and get away with the **$1,411,819.27** from **Loan #2** which they had stolen. (**Exhibit 54 [approval letter Byron/ N. Stanley 12-22-2020]; Exhibit 43 [email 8-21-2020 + attachments].**)

122.    Between February 7, 2020 and the purchase of Knoll View on February 21, 2020, ISPEROV and IRIDIUM, utilizing the services of escrow officer James Lough (Greater LA Escrow/ **Loan #2**), would misinform and confound Jenny Kim, the escrow officer for the Knoll View purchase (West Coast Escrow/ **Loan #3**) and alchemize **Loan #2** from a proposed second deed of trust against N. Stanley, first for $75,000.00- $100,000.00, then for **$135,000.00**, then into a second deed of trust cross-collateralized between N. Stanley *and* California Street for **$1,411,819.27**. (**Exhibit 27 [Letter of Intent 2nd DOT N. Stanley 1-2-2020 (**$75,000.00-$100,000.00**)]; Exhibit 41 [Borrowers Est. Loan #2 (**Loan # HM20200124004**) 1-29-2020/ $135,000.00]; Exhibit 38 [Email Fierro/ James Lough/ Jenny Kim 2-3-2020 p. 25/30  (***authorizing Lough to send $135,000.00 to Knoll View Escrow***)]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2 (**Loan # HM20200124004**) N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-7-2020/ $1,411,819.27].**)  Between the funding

(February 7, 2020) and the purchase of Knoll View (February 21, 2020) this money would disappear into the pockets of the IRIDIUM Defendants and FIERRO. (**Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # <u>HM20200124004</u>) **N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate* 2-7-2020/ <u>$1,411,819.27</u>].)** ZOLLIE would be unaware of **<u>Loan #2</u>** until after he received a Notice of Default for **<u>$77,659.50</u>** sometime after July 1, 2020. (**Exhibit 16 [NOD California St./ IRIDIUM 6-18-2020/ OC/ <u>$77,659.50</u>]; Exhibit 17 [NOD N. Stanley/ IRIDIUM/ 6-19-2022/ $77,659.50].)**

## ***<u>FIERRO</u>***

**123.** When FIERRO, ZOLLIE's real estate agent, brought ZOLLIE to a meeting with ISPEROV on January 7, 2020 and let ISPEROV bait ZOLLIE with a prime conforming loan application for $1,880,000.00, she was aware that ISPEROV had already closed and financed a hard money loan for **<u>$1,967,750.00</u>** using ZOLLIE's identity without him knowing it. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00]; Exhibit 11 [email Isperov to FIERRO 1-6-2020 + attached Borrowers Statement]; Exhibit 28 [email 12-11-2020 + final HUD <u>Loan #1</u> N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $<u>1,932,500.00</u>]; Exhibit 30 [email Spencer Farrar 1-31-2019 (*"I was under the impression that there was a signing today…"*)]; Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-**

**2019].**)  Prior to this, on January 2, 2020, ISPEROV was already pitching FIERRO on a second deed of trust against N. Stanley. (**Exhibit 27 [Letter of Intent 2nd DOT N. Stanley 1-2-2020]; Exhibit 41 [Borrowers Est. Loan #2 (**Loan # HM20200124004**) 1-29-2020/ $135,000.00].**)

124.     In the months after the meeting with ISPEROV on January 7, 2020, FIERRO intentionally confused ZOLLIE into thinking he had one loan for $1,400,000.00 for Knoll View (**Loan #3**) when he actually had two loans for $1,400,000.00, a purchase mortgage for Knoll View (**Loan #3**) and a second against N. Stanley and California Street (**Loan #2**) which she did by intentionally confusing him about his loan amounts and what they were for, sending him floating signature pages and telling him to just "follow the Xs" so that he would not know what he was signing. (**Exhibit 58 [Email 2-20-2020 Fiero-to-Zollie]; Exhibit 59 [Email 2-20-2020 Fierro-to-Zollie].**)  FIERRO later sent ZOLLIE a confusing email telling him he had a "*1st refinance from 2015 California Street*" from which he was supposed to get $100,666.00 and a "*second refinance*" from which he was supposed to receive $135,000.00 which was "*supposed to be used as the remaining payment for Knoll View.*" (**Exhibit 6 [email Fierro 4-30-2020] + purchase agreement].**)  FIERRO never told ZOLLIE the amount of **Loan #2**, or even the existence of **Loan #2**, and she was able to do this because **Loan #2** and **Loan #3** were for the same amount - $1,400,000.00**. (Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note Loan #3 Knoll View IRIDIUM to *Z Real***

*Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75]; **Exhibit 33 [Final Borrowers Statement (HUD final disclosures) <u>Loan #2</u>** (Loan # <u>HM20200124004</u>) **N. Stanley <u>and</u> California St. IRIDIUM to** *Zollie Stevens* <u>and</u> *Z Real Estate* 2-7-2020/ <u>$1,411,819.27</u>].) FIERRO didn't need to be told by VICTORIA that no money had gone into the Knoll View Escrow from <u>**Loan #2**</u> because she already knew it. (**Exhibit 53 [12-23-2020 email from Victoria].)** Having wrongfully authorized the wiring of funds to escrow for the purchase of Knoll View without ZOLLIE's knowledge, FIERRO never followed up with Jenny Kim of West Coast Escrow to document what money was wired from <u>**Loan #2**</u> into the Knoll View escrow because she knew about the scheme. (**Exhibit 38 [Email Fierro/ James Lough/ Jenny Kim 2-3-2020 p. 25/30 (***authorizing Lough to send $135,000.00 to Knoll View Escrow)***].)** ZOLLIE alleges that FIERRO received her payment from the IRIDIUM defendants directly since her fees are not reflected in the final closing statement for Knoll View. (**Exhibit 60 [Buyers Final Statement Knoll View <u>$1,552,493.43</u> 2-21-2020].)**

**125.**    Under California law, a promise made without any intention of performing it," such as that made by ISPEROV and FIERRO on January 9, 2020 is also actual fraud. *Bushell v. JP Morgan Chase Bank, N.A.,* 220 Cal. App. 4th 915, 930, 163 Cal. Rptr. 3d 539, 551 (2013); Cal. Civ. Code §1572, subd. 4; 1 Witkin, Summary of Cal. Law (10th ed. 2005 Contracts §293, p.230.

126.   ZOLLIE alleges that Defendants ISPEROV, FRED DOCTOROVICH, ANATOLY DOCTOROVICH, BORIS DORFMAN, AFD, LENDING BEE, VELOCITY, IRIDIUM, and FIERRO as articulated above are guilty of oppression fraud or malice for forged documents and identify theft which is sufficient to satisfy California Civil Code §3924 and he seeks punitive damages from them in an amount no less than $10,000,000.00 for each defendant.

### THIRD CAUSE OF ACTION
*Negligence & Negligent Misrepresentation*
**(Against FIERRO)**

**127.**   Plaintiff hereby alleges and incorporates herein by reference, each and every other paragraph contained in this Complaint as if the same were fully set forth herein.

128.   The elements of a cause of action for professional negligence are failure to use the skill and care that a reasonably careful professional operating in the field would have used in similar circumstances, which failure proximately causes damage to plaintiff. *Carlton v. Quint,* 77 Cal.App.4th 690, 698–699, 91 Cal. Rptr. 2d 844 (2000). The elements of negligent misrepresentation are the same except for the second element, which for negligent misrepresentation is the defendant made the representation without reasonable ground for believing it to be true. *Wells Fargo Bank, N.A. v. FSI, Financial Solutions, Inc.,*196 Cal.App.4th 1559, 1573, 127 Cal.Rptr.3d 589 (2011); *National Union Fire Ins. Co. of Pittsburgh, PA v.*

*Cambridge Integrated Services Group, Inc.* (2009) 171 Cal.App.4th 35, 50, 89 Cal.Rptr.3d 473.)

**129.**   On September 11, 2019, FIERRO was so concerned about making her commission for the Knoll View sale that she fronted the  **$41,850.00** earnest money pursuant to the purchase and sale agreement. **(Exhibit 15 [Fierro email 9-11-2022 w/ fake DocuSign+ check as attachments]**.)

**130.**   On January 7, 2020, FIERRO watched ISPEROV bait ZOLLIE with a standard conforming loan application for a loan (**Loan #1**) that had been funded by Defendant VELOCITY between December 27, 2019 and December 31, 2019. **(Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00]; Exhibit 10 [email Isperov 1-7-2020 (***"Nice to meet you today."***)]; Exhibit 12 [DOT** Loan #1 **Velocity 1-9-2020/ $1,762,500.00]; Exhibit 30 [email Spencer Farrar 1-31-2019 (***"I was under the impression that there was a signing today…"***)]; Exhibit 31[Email Farrar 4-24-2020 + Est. Borrowers Statement].**)  On January 7, 2020, FIERRO knew or should have known that ISPEROV had already funded **Loan #1** for **$1,932,500.00** sometime between December 27, 2019 and December 31, 2019**,** but she nevertheless encouraged ZOLLIE to take ISPEROV's offer telling ZOLLIE it was better than the deal that his trusted associates BYRON and LOU ELLEN were offering. **(Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00]; Exhibit 28 [email 12-11-2020 + final HUD** Loan #1

N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ **$1,932,500.00]; Exhibit 31[Email Farrar 4-24-2020 + Est. Borrowers Statement].**)  Simultaneously behind ZOLLIE's back, FIERRO was already negotiating **Loan #2** with ISPEROV for a downpayment for Knoll View to insure her commission. (**Exhibit 27 [Letter of Intent Loan #2 N. Stanley 1-2-2020].**)

131.   On February 3, 2020, FIERRO unilaterally and without right, authorized James Lough and Greater LA Escrow (Escrow No. 16498-JL) to wire money from **Loan #2** directly to Jenny Kim West Coast Escrow (Escrow No. 4510919-04668 JK) for the purchase of Knoll View. (**Exhibit 38 [Email Fierro/ James Lough/ Jenny Kim 2-3-2020 p. 25/30 (***authorizing Lough to send $135,000.00 to Knoll View Escrow)***].**) After authorizing the wiring of funds to escrow, FIERRO never followed up with Jenny Kim of West Coast Escrow to learn that *no money* from **Loan #2** ended up being wired into escrow for the purchase of Knoll View. (**Exhibit53 [email from Victoria 12-23-2020].**)  In cooperation with ISPEROV to continue to confuse ZOLLIE, FIERRO told ZOLLIE he had a "*1st refinance from 2015 California Street*" from which he was supposed to get $100,666.00 and a "*second refinance*" from which he was supposed to receive $135,000.00 which was "*supposed to be used as the remaining payment for Knoll View*." (**Exhibit 6 [email Fierro 4-30-2020] + purchase agreement].**)

132.   On February 20, 2020 FIERRO sent loan documents to ZOLLIE for him to sign which were for **Loan #2**, but which she confused him into thinking were for

**Loan #3** – both being for the same amount of $1,400,000.00. (**Exhibit 58 [Email 2-20-2020 Fierro-to-Zollie]**.) FIERRO never told ZOLLIE how Knoll View was funded, but instead she tried to hide information from him and trick him even though she knew or should have known that **Loan #2** had already funded on February 7, 2020 and deeds of trust had already been recorded against both N. Stanley and California Street. (**Exhibit 59 [Email 2-20-2020 Fierro-to-Zollie]; Exhibit 22 [DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens and Z Real Estate* 2-26-2020/ LA/ $1,400,000.00]; Exhibit 21 [DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens and Z Real Estate* 2-26-2020/ OC/ $1,400,000.00]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley and California St. IRIDIUM to *Zollie Stevens and Z Real Estate* 2-7-2020/ $1,411,819.27]**.)

133.   FIERRO pushed ZOLLIE into a purchase of Knoll View, but yet there is no indication of her getting her earnest money returned from the Knoll View escrow or even getting a commission which leads ZOLLIE to allege that she got money from **Loan #2**, the secret second deed of trust for **$1,552,493.43** funded to themselves by the IRIDIUM defendants. (**Exhibit 60 [Buyers Final Statement Knoll View $1,552,493.43 2-21-2020]**.)

**134.**   FIERRO intentionally misrepresented facts to ZOLLIE and punitive fraud damages are recoverable in actions involving intentional, but not negligent

misrepresentations. Cal. Civ. Code §3294; *Wyatt v. Union Mortgage Co.,* 24 Cal. 3d 773, 790, 157 Cal. Rptr. 392, 598 P.2d 45 (1979).  ZOLLIE therefore seeks punitive damages against FIERRO of no less than $10,000,000.00.

### FOURTH CAUSE OF ACTION
*Slander of Title*
**(Against IRIDIUM, VELOCITY, ISPEROV& DORFMAN)**

**135.**   Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

**136.**   Slander of title may be either by words or an act that clouds title to the property. *Alpha & Omega Development, LP v. Whillock contracting*, Inc. 200 Cal. App. 4th 656, 661 [132 Cal. Rptr. 3d 781] (2011). The slanderous statement must be made without privilege or justification. *Schep v. Capital One, NA.*, 12 Cal. App. 5th 1331, 1336 [220 Cal. Rptr. 3d 408] (2017).  The main thrust of this cause of action is protection from injury to the salability of a property. *Howard v. Schaniel,* 113 Cal. App. 3d 256, 264 (1980); *Smith v. Stuthman,* 79 Cal. App. 2d 708, 709 (1947). "The elements of a cause of action for slander of title are (1) a publication, which is (2) without privilege or justification, (3) false, and (4) causes pecuniary loss. *Basgall v. Fed. Nat'l Mortg. Ass'n*, No. B251339, 2015 WL 1088032, at *9 (Cal. Ct. App. Mar. 11, 2015).

**137.**   The first slander of Plaintiff's title occurred on January 9, 2020 when Defendant VELOCITY recorded a deed of trust against N. Stanley without ZOLLIE's knowledge and which ZOLLIE had not agreed to, the deed of trust,

promissory note and loan disclosures being the result of fraud and identity theft.

**(Exhibit 12 [DOT <u>Loan #1</u> N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ <u>$1,762,500.00</u>].)**

138.   On February 26, 2020, Defendant IRIDIUM slandered ZOLLIE's title again when they recorded <u>Loan #2</u> against N. Stanley and California Street for which was a secret deed of trust, also being the result of fraud and identity theft, by which ZOLLIE got nothing. **(Exhibit 22 [DOT <u>Loan #2</u> N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate* 2-26-2020/ LA/ <u>$1,400,000.00</u>; Exhibit 21 [DOT <u>Loan #2</u> N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate* 2-26-2020/ OC/ <u>$1,400,000.00</u>].)**

139.   These actions by defendants interfered with ZOLLIE's ability to borrow against California Street and N. Stanley, to transact against his properties or to quietly enjoy them and these actions were done intentionally to force ZOLLIE into foreclosure and defraud him.  Accordingly ZOLLIE seeks the following damages from Defendants which are: "1) the expense of legal proceedings necessary to remove the doubt cast by the disparagement, 2) financial loss resulting from the impairment of vendibility of the property, and 3) general damages for the time and inconvenience suffered by the plaintiff in removing the doubt cast upon the property." *Seely v. Seymour,* 190 Cal. App. 3d 844, 865 (1987).

//

### FIFTH CAUSE OF ACTION
*Cancellation of Instruments*
**(Against Velocity Commercial Capital, LLC, U.S. Bank N.A. as Indenture Trustee for VCC 2020 MC l Trust; DOES 1-100)**

**140.** Plaintiff hereby incorporates by reference each preceding paragraph as if the same were fully set forth herein.

**141.** California Civil Code § 3412 in relevant part provides that: A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled. The effect of a decree cancelling an instrument is to place the parties where they were before the instrument was made, as if it had never been made. *Bank of America v. Greenbach*, 98 Cal.App.2d 220, 228 (1950).

**142.** By the standard stated above, the first deed of trust for **$1,762,500.00** in favor of Defendant VELOCITY, which was the result of identity theft and fraud, should be deemed Void and ordered cancelled so that they it may be released, lifted, and expunged from the chain of title for N. Stanley. (**Exhibit 12 [DOT Loan #1** N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ **$1,762,500.00]**.)

### SIXTH CAUSE OF ACTION
*Quiet Title*
**(Against Velocity Commercial Capital, LLC, U.S. Bank N.A. as Indenture Trustee for VCC 2020 MC l Trust; DOES 1-100)**

**143.** Plaintiff hereby incorporates by reference each and every one of the preceding paragraphs as if the same were fully set forth herein.

144.   The mortgage and note to U.S. Bank, are the product of fraud and made in violation of Federal and state mortgage lending law and the instruments are therefore void.

145.   ZOLLIE seeks to quiet title to the N. Stanley property for the mortgage note and deed of trust (**Loan #1**) allegedly secured by the N. Stanley Property by Defendant VELOCITY, later assigned to Defendant U.S. Bank National Association, as Indenture Trustee for VCC 2020 MC 1 Trust ("U.S. Bank") who claim a legal interest in the Stanley Property adverse to ZOLLIE which he disputes and as to all unknown persons, as of December 27, 2019, which is the first alleged date of funding the illegal loan. (**Exhibit 28 [email 12-11-2020 + final HUD Loan #1 N. Stanley VELOCITY to *Zollie Stevens* 1-9-2020/ $1,932,500.00]; Exhibit 31[Email Farrar 4-24-2020 + Est. Borrowers Statement]; Exhibit 42 [Conditional Loan approval 12-30-2019]; Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-2019].)**

146.   Plaintiffs are ignorant of any DOE defendants claiming any legal or equitable right, title, estate, lien or interest in Vanalden Street as described in this complaint adverse to plaintiff's title or any cloud upon plaintiff's title thereto, and therefore sues these defendants by so naming them, pursuant to *Cal. Code of Civil Proc. §s 762.020 and 762.060.*

147.   Plaintiffs seek a binding and conclusive judgment against all of these unknown persons pursuant to *Cal. Code of Civil Procedure §764.030.*

**148.**   This determination is sought as of the date of the filing of Plaintiff's original complaint on March 20, 2023.

## SEVENTH CAUSE OF ACTION
*Breach of Fiduciary Duty*
(Against FIERRO)

149.   Plaintiff hereby incorporates by reference each preceding paragraph as if the same were fully set forth herein.

150.   The elements of a cause of action for breach of fiduciary duty are the existence of a fiduciary relationship, its breach, and damage proximately caused by that breach. City of Atascadero v. Merrill Lynch, Pierce, Penner & Smith, Inc., 68 Cal.App.4th 445, 483 (1998).  A realtor owes a duty to put a client's interests before her own and FIERRO, ZOLLIE's real estate agent, did many things that were for her benefit and which harmed ZOLLIE.  *Skopp v. Weaver*, 16 Cal. 3d 432, 440, 546 P.2d 307, 312 (1976).

**151.**   On several occasions in November and December, 2019, ZOLLIE  told FIERRO, his real estate agent, that he did not want to go through with the purchase of Knoll View because he did not have the cash down payment.

**152.**   On about September 11, 2019, without right or authorization, FIERRO deposited **$41,850.00** of her own money into the Knoll View escrow at West Coast Escrow to pay for fees and costs necessary for a closing of the escrow. **(Exhibit 15 [Fierro email 9-11-2022 w/ fake DocuSign+ check as attachments]**.)  FIERRO, also without authorization from ZOLLIE, instructed Greater LA Escrow (Escrow

No. 16498-JL) to wire the proceeds from **Loan #2** to West Coast Escrow (Escrow No.4510919-04668 JK) for the purchase of the Knoll View Property. (**Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note Loan #3 Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].**) ZOLLIE learned after-the-fact that the Knoll View Property escrow was going to close and he was surprised to hear from FIERRO that it had closed on February 7, 2020. FIERRO did not have ZOLLIE's permission to wire funds into Escrow No. 4510919-04668 JK for the purchase of Knoll View.

**153.**   On January 7, 2020, FIERRO watched ISPEROV bait ZOLLIE with a standard conforming loan application for a loan (**Loan #1**) that she knew or should have known had already been funded by Defendant VELOCITY. (**Exhibit 8 [email DiCenso to Zollie 2-5-2021 with Loan application N. Stanley/ 1-9-2020/ $1,880,000.00]; Exhibit 30 [email Spencer Farrar 1-31-2019 (***"I was under the impression that there was a signing today…"***)]; Exhibit 31[Email Farrar 4-24-2020 + Est. Borrowers Statement].**)

**154.**   On February 3, 2020, FIERRO authorized James Lough and Greater LA Escrow (Escrow No. 16498-JL) to wire money from **Loan #2** directly to Jenny Kim West Coast Escrow (Escrow No. 4510919-04668 JK) for the purchase of Knoll View which was without authorization from ZOLLIE. (**Exhibit 38 [Email Fierro/ James Lough/ Jenny Kim 2-3-2020 p. 25/30 (***authorizing Lough to send $135,000.00 to Knoll View Escrow)***].**) After authorizing the wiring of funds to

escrow, FIERRO continued to be included in the emails between Lough and Kim, but she never followed up with Kim to learn that *no money* from **Loan #2** ended up being wired into escrow for the purchase of Knoll View. (**Exhibit [Email chain between Fierro/ James Lough/ Jenny Kim 2-3-2020-2-19-2020]**; **Exhibit53 [email from Victoria 12-23-2020].**)

155.    On February 20, 2020 FIERRO sent loan documents to ZOLLIE for him to sign which were for **Loan #2,** but which she intentionally confused with **Loan #3**, which was the purchase loan for Knoll View for the same amount - $1,400,000.00. (**Exhibit 58 [Email 2-20-2020 Fierro-to-Zollie]**.) That same day, FIERRO attempted to get ZOLLIE to sign a floating signature page with no identification of what it was for or how much it was for, which ZOLLIE is informed and alleges was for **Loan #2** which FIERO knew or should have known had already funded on February 7, 2020 and had already been recorded against both N. Stanley and California Street.(**Exhibit 59 [Email 2-20-2020 Fierro-to-Zollie] Exhibit 22 [2nd DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-26-2020/ LA/ $1,400,000.00]; Exhibit 21 [2nd DOT Loan #2 N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-26-2020/ OC/ $1,400,000.00]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # HM20200124004) **N. Stanley and California St. IRIDIUM to *Zollie Stevens* and *Z Real Estate* 2-7-2020/ $1,411,819.27].**)

**156.**   Between January 2, 2020 and February 20, 2020, FIERRO cooperated with ISPEROV as he ballooned **Loan #2** from a small second deed of trust for <u>between $75,000.00 and $100,000.00</u> (against N. Stanley only) into a second for $135,000.00 (still against N. Stanley only) and then into a loan for **$1,411,819.27** (now cross-collateralized between N. Stanley *and* California Street). (**Exhibit 27 [Letter of Intent 2nd DOT N. Stanley 1-2-2020 (**$75,000.00- $100,000.00)**]; Exhibit 41 [Borrowers Est. <u>Loan #2</u> (**Loan # <u>HM20200124004)</u> 1-29-2020/ $135,000.00]; Exhibit 33 [Final Borrowers Statement (HUD final disclosures) Loan #2** (Loan # <u>HM20200124004</u>) **N. Stanley <u>and</u> California St. IRIDIUM to *Zollie Stevens* <u>and</u> *Z Real Estate* 2-7-2020/ $1,411,819.27].)**   ZOLLIE also did not authorize **Loan #2**, was not aware of **Loan #2**, and the West Coast escrow instructions makes no mention of FIERRO or Compass having authority to direct funds from **Loan #2** to go directly into the escrow for Knoll View. (**Exhibit 6 [purchase and sale agreement  9-7-2019 ¶20**].)

**157.**   FIERRO pushed ZOLLIE into a sale, but there is no indication of her getting her earnest money returned from the Knoll View escrow or even getting a commission which leads ZOLLIE to allege that she got her money returned secretly from the IRIDIUM defendants and **Loan #2**. (**Exhibit 60 [Buyers Final Statement Knoll View <u>$1,552,493.43</u> 2-21-2020].)**

**158.**   As of April 2020, FIERRO was still cooperating and conspiring with ISPEROV by repeating confusing non-sense to ZOLLIE that he had a "*1st*

*refinance from 2015 California Street*" from which he was supposed to get

$100,666.00 and a "*second refinance*" from which he was supposed to receive

$135,000.00 which was "*supposed to be used as the remaining payment for Knoll*

*View*." (**Exhibit 6 [email Fierro 4-30-2020] + purchase agreement].**)

**159.**   Punitive fraud damages are recoverable in actions involving intentional, but

not negligent misrepresentations and Plaintiff seeks such punitive damages against

FIERRO of no less than **$10,000,000.00**. Cal. Civ. Code §3294; *Wyatt v. Union*

*Mortgage Co.,* 24 Cal. 3d 773, 790, 157 Cal. Rptr. 392, 598 P.2d 45 (1979).

**EIGHTH CAUSE OF ACTION**
*Civil Theft of $1,411,819.27,*
*Pursuant to CAL. PENAL CODE §496(c)*
**(Against ISPEROV, BORIS DORFMAN, FRED DOCTOROVICH,**
**ANATOLY DOCTOROVICH & FIERRO)**

160.   Plaintiff hereby incorporates by reference each preceding paragraph as if the

same were fully set forth herein.

161.   On February 26, 2020, IRIDIUM recorded a deed of trust for **Loan #2** for

$1,400,000.00 in Los Angeles County. (**Exhibit 22 [2-26-2020 DOT (Loan**

**#2/LA) N. Stanley/ Calif. $1,411,819.27].**)  On February 26, 2020, IRIDIUM also

recorded a deed of trust for **Loan #2** for $1,400,000.00 in Orange County. (**Exhibit**

**21 [DOT (Loan #2) Orange County 2-26-2020].**)  This was a secret second,

cross-collateralized against and secured by two of ZOLLIE's properties and for

which he got nothing except two Notices of Default. (**Exhibit 17 [NOD N.**

**Stanley/ IRIDIUM/ 6-19-2022/ $77,659.50]; Exhibit 17 [NOD N. Stanley/ IRIDIUM/ 6-19-2022/ $77,659.50].)**

162.    Plaintiff is entitled to treble damages for this **$1,411,819.27** from Defendants ISPEROV, DORFMAN, FRED DOCTOROVICH, ANATOLY DOCTOROVICH, and FIERRO pursuant to Cal. Penal Code §496(c).  See also: *Siry Investment, L.P. v. Farkhondehpour,* 13 Cal. 5th 333 (2022).

<u>**NINTH CAUSE OF ACTION**</u>
*Violation of Cal. Civ. Code §1798.93 for Identity Theft*
**(Against ISPEROV, IRIDIUM, DORFMAN; DOES 1-100)**

163.    Plaintiff hereby incorporates by reference each preceding paragraph as if the same were fully set forth herein.

**164.**    On January 9, 2020, VELOCITY recorded **<u>Loan #1</u>** to ZOLLIE in the amount of <u>$1,762,500.00</u> at 10.99% per annum for a term of 12 months (1-year balloon) against N. Stanley via a forged Deed of Trust and forged promissory note which was identity theft. (**Exhibit 12 [DOT Velocity $1,762,500.00]; Exhibit 62 [email 3-9-2020 DiCenso + (forged) Promissory Note <u>Loan #3</u> Knoll View IRIDIUM to *Z Real Estate* 2-11-2020/ $1,400,000.00 P. 28/ 75].**)  ZOLLIE never signed a promissory note for this deed of trust and, when he requested a promissory note from VELOCITY almost three years later, he received an unsigned note from VELOCITY employee Bruce Kallaher. (**Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-2019].**)

ZOLLIE is informed and believes that VELOCITY did not have a promissory note

signed by him because there is none. (**Exhibit 55 [email B. Kallaher 2-13-2023 + unsigned "time note" $1,762,500.00  12-30-2019].**)

165.   Under California Civil Code §1798.93 a person that proves he or she is the victim of identity theft shall be entitled to a judgment providing all of the following, as appropriate.

> *(1) A declaration that he or she is not obligated to the claimant on that claim.*
> *(2) A declaration that any security interest or other interest the claimant had purportedly obtained in the victim's property in connection with that claim is void and unenforceable.*
> *(3) An injunction restraining the claimant from collecting or attempting to collect from the victim on that claim, from enforcing or attempting to enforce any security interest or other interest in the victim's property in connection with that claim, or from enforcing or executing on any judgment against the victim on that claim.*

166.   ZOLLIE is entitled to and is seeking an injunction to prevent **Velocity Commercial Capital, LLC, U.S. Bank N.A. as Indenture Trustee for VCC 2020 MC l Trust** from collecting on the debt for **Loan #1**. (**Exhibit 61 [Assignment DOT Loan #1 8-4-2020]**)

167.   Plaintiff is also seeking actual damages, attorney fees and costs and any equitable relief that the court deems appropriate.

## TENTH CAUSE OF ACTION
*Violation of the Business and Professions Code §17200 et al.*
(Against all parties)

168.   Plaintiff hereby incorporates by reference each preceding paragraph as if the same were fully set forth herein.

**169.**   Business and Professions Code §17200, the unfair competition law (UCL), permits civil recovery for "any unlawful, unfair or fraudulent business act or practice." *Rufini v. CitiMortgage, Inc.*, 227 Cal. App. 4th 299, 310, 173 Cal. Rptr. 3d 422, 431 (2014), as modified on denial of reh'g (July 22, 2014).

**170.**   Defendant VELOCITY's failure to comply with TILA and Reg. Z, their violation of federal law, also violates the UCL prior to originating **Loan #1** between December 27, 2019 and December 31, 2019 constitutes an "unlawful, unfair or fraudulent business act or practice." *Rufini,* supra at 310.

**171.**   Defendants ISPEROV and FIERRO violated California Civil Code §1798.93 by stealing ZOLLIE's identity to fund **Loan #1** without his knowledge or consent and to extract **$1,411,819.27** from his equity via **Loan #2**, which they kept secret from him.

**172.**   The IRIDIUM and VELOCITY Defendants also violated 18 USC §1028(a) which prohibits the use of someone's identity for illegal purposes – in this case stealing ZOLLIE's identity to fund **Loan #1** without his knowledge or consent and

stealing **$1,411,819.27** via **Loan #2**.  18 USC §1028(a) does not provide an individual right of action, but is an unlawful act sufficient for a UCL claim.

173.   Defendant VELOCITY has also failed to respond to ZOLLIE's QWR in violation of 12 U.S.C.S. §2605(e)(2); *In re Residential Capital, LLC*, No. 12-12020 (MG), 2016 Bankr. LEXIS 962, at *1 (U.S. Bankr. S.D.N.Y. Mar. 28, 2016). This was a violation of RESPA, for failure to respond in writing within sixty (60) days after his initial inquiry and for filing to set out the corrective action. 12 U.S.C.§ 2605(e) & (c).

174.   Under 12 U.S.C. §2605(e)(2)(C)(i) & (ii), a borrower succeeding under a RESPA may recover attorney fees and costs and actual damages. 12 U.S.C.§2605(f)(1); 12 U.S.C. §2605(f)(3); 12 U.S.C.§2605(f)(1).  RESPA provides that a servicer is liable for actual damages to a borrower as a result of the servicer's failure "to comply with any provision of [the] section." 12 U.S.C. § 2605(f).

175.   Pursuant to the UCL Plaintiff seeks injunctive relief and to be restored to the status quo by Defendant VELOCITY withdrawing the recorded a deed of trust against N. Stanley. *Feitelberg* v. *Credit Suisse First Boston, LLC,* 134 Cal.App.4th 997, 1012 (2005). Plaintiff also seeks to "restored to the status quo" by the return of the multiple million dollars in equity and rental income he lost by the actions of the IRIDIUM Defendants." *Korea Supply Co.* v. *Lockheed Martin Corp.,* 29 Ca1.4th 1134, 1149 (2003).

**176.**   According to California Civil Code §3294 "where is it proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." In this context, malice requires that the defendant be *either* [emphasis added] "motivated by hatred or ill will towards the plaintiff' or "lacked reasonable ground for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiffs' rights." *Nguyen v. JP Morgan Chase Bank N.A*., No. 12-CV-04183, 2013 U.S. Dist. LEXIS 69362, at *9 (N.D. Cal. May 15,2013.) For these reasons, Plaintiff seeks punitive damages under the UCL in the amount of no less than $10,000,000.00 against each of the VELOCITY and IRIDIUM Defendants.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for judgment against Defendants, and each of them, as follows:

a)   Plaintiff prays for an ORDER by this Court that title to N. Stanley is to be returned to Plaintiff in fee simple and the mortgage and deed of trust currently assigned to Defendant U.S. Bank is declared VOID by having been created by fraud and ordered cancelled and expunged.

b)   Plaintiff prays for treble damages pursuant to Cal. Penal Code §496(c) against the IRIDIUM Defendants for the **$1,411,819.27** that was stolen from Plaintiff via a forged deed of trust and promissory note.

c) Plaintiff seeks attorney fees incurred for the cost of this action.

d) Plaintiff seeks exemplary damages for negligence by FIERRO of no less than $10,000,000.00.

e) Plaintiff seeks exemplary damages for breach of fiduciary duty by FIERRO of no less than $10,000,000.00..

f) Pursuant to the UCL, Plaintiff seeks restitution of the current value of his California Street Property which he improved and increased in value to be worth over $2,000,000.00.

g) Plaintiff seeks punitive damages against the VELOCITY Defendants and the IRIDIUM Defendants, including FIERRO, for fraud by intentional misrepresentation pursuant to Cal. Civ. Code §3294 in an amount no less than $10,000,000.00 for each defendant.

h) Plaintiff also seeks punitive damages against the VELOCITY Defendants and the IRIDIUM Defendants pursuant to the UCL for Defendants' reckless disregard of Plaintiff's rights in an amount no less than $50,000,000.00 for ISPEROV and $10,000,000.00 for each of the other IRIDIUM and VELOCITY defendants.

Dated:  March 22, 2023

GOMEZ LAW, APC

By:_____

Susan M. Murphy.
Attorney for Plaintiff,
ZOLLIE STEVENS

## <u>VERIFICATION OF COMPLAINT ZOLLIE STEVENS</u>

I, ZOLLIE STEVENS, hereby declare:

      I am the Plaintiff in the above-entitled action. I have read the forgoing complaint and know the contents thereof. With respect to the causes of action alleged by me, the same is true by my own knowledge, except as to those matters which are therein stated on information and belief, and, as to those matters, I believe them to be true.

      I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct.

Executed on  <u>3/22/23</u>   in the city of Los Angeles, California.



ZOLLIE STEVENS, Plaintiff.

VERIFICATION OF COMPLAINT

# Verification - Stevens

**Final Audit Report**                                                              2023-03-22

| | |
|---|---|
| Created: | 2023-03-22 |
| By: | Guadalupe Marin (GM@gomezlawla.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAfNx_plaOyytyeY1pVi_P0aRVt3D6mOXJ |

## "Verification - Stevens" History

📄 Document created by Guadalupe Marin (GM@gomezlawla.com)
   2023-03-22 - 6:19:08 PM GMT

📧 Document emailed to zrstevens@yahoo.com for signature
   2023-03-22 - 6:19:44 PM GMT

📄 Email viewed by zrstevens@yahoo.com
   2023-03-22 - 6:20:30 PM GMT

✍️ Signer zrstevens@yahoo.com entered name at signing as Zollie Stevens
   2023-03-22 - 6:25:46 PM GMT

✍️ Document e-signed by Zollie Stevens (zrstevens@yahoo.com)
   Signature Date: 2023-03-22 - 6:25:48 PM GMT - Time Source: server

✅ Agreement completed.
   2023-03-22 - 6:25:48 PM GMT

Names and email addresses are entered into the Acrobat Sign service by Acrobat Sign users and are unverified unless otherwise noted.

**Adobe Acrobat Sign**